IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

ARTHUR PROVENCHER, MICHAEL McGUIRE and RONALD MARTEL, individually and on behalf of all similarly situated individuals,

                    Plaintiffs,

-v-

BIMBO BAKERIES USA, INC.; BIMBO FOODS BAKERIES DISTRIBUTION LLC,

                    Defendants.

Court File No. 2:22-CV-198

**COMPLAINT–CLASS ACTION**

(EQUITABLE RELIEF SOUGHT)

Plaintiffs, on behalf of themselves and other similarly situated individuals, by and through their undersigned counsel, file this Class and Collective Action Complaint and aver as follows:

## NATURE OF ACTION

1. This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive, and monetary relief resulting from Defendants' misclassification of their Vermont bakery distributor drivers (Distributors) as independent contractors. Defendants Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries Distribution LLC (collectively Bimbo) are in the wholesale bakery business and rely on Distributors to deliver to and stock bakery goods in grocery stores, mass retailers, and restaurants. Plaintiffs allege violations of the Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*; and the Vermont Employment Practices Laws, 21 V.S.A. § 341 *et seq.*

2. Bimbo principally employs its Distributors to deliver baked goods from bakeries in Vermont and its surrounding states to customers in Vermont. In addition to delivering Bimbo's

products to its customers, Distributors stock the products on store shelves and deploy promotional displays designed and provided by Bimbo.

3. Plaintiffs bring their Vermont state-law claims on behalf of a putative class under Federal Rule of Civil Procedure 23 consisting of all persons who worked as Distributors for Bimbo in the state of Vermont at any time in the six years prior to the filing of this Complaint.

4. Plaintiffs also bring this action as an opt-in collective action on behalf of Plaintiffs and all similarly situated individuals for violations of the FLSA, consisting of all persons who worked as Distributors for Defendants in the states of Connecticut, New York, and Vermont at any time within three years prior to the filing of this Complaint.

5. This action challenges Bimbo's misclassification of Distributors as independent contractors, which resulted in Bimbo denying Distributors their rights, obligations, and privileges as employees under federal and Vermont law, including denial of overtime compensation.

## PARTIES

6. Plaintiff Provencher is a resident of South Hero, Vermont who works as a Distributor for Bimbo in Vermont. He performed delivery and merchandizing services to local retailers of bakery products manufactured or sold by Bimbo. Mr. Provencher operates out of a Bimbo distribution center in Willison, Vermont. Mr. Provencher regularly works approximately 51 hours per week, and to the extent he works more than 40 hours a week, Bimbo has not paid him overtime premium pay.

7. Plaintiff Martel is a resident of Colchester, Vermont who works as a Distributor for Bimbo in Vermont. He performed delivery and merchandizing services to local retailers of bakery products manufactured or sold by Bimbo. Mr. Martel operates out of a Bimbo distribution center

in Williston, Vermont. Mr. Martel often works over 40 hours per week, and to the extent he works more than 40 hours a week, Bimbo has not paid him overtime premium pay.

8. Plaintiff McGuire is a resident of Essex, Vermont who works as a Distributor for Bimbo in Vermont. He performed delivery and merchandizing services to local retailers of bakery products manufactured or sold by Bimbo. Mr. McGuire operates out of a Bimbo distribution center in Williston, Vermont. Mr. McGuire often works over 40 hours per week, and to the extent he works more than 40 hours a week, Bimbo has not paid him overtime premium pay.

9. Defendant Bimbo Bakeries USA, Inc. is a Delaware corporation with its principal place of business in Horsham, Pennsylvania.

10. Bimbo Foods Bakeries Distribution LLC is a Delaware limited liability company with its principal place of business in Horsham, Pennsylvania. On information and belief, its sole member is Bimbo Bakeries USA.

11. To distribute its products to grocery stores and stock them on store shelves, Bimbo hires individuals as employees but misclassifies them as independent contractors. Bimbo is, and at all relevant times was, the employer of Plaintiffs and all distributors subject to Vermont law and the FLSA.

## JURISDICTION AND VENUE

12. Bimbo conducts substantial business in Vermont, including but not limited to the sale, marketing, and distribution of baked goods there. Bimbo intentionally directed its business activities at distributors and other individuals located in Vermont.

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the FLSA claim arises under the laws of the United States. To the extent Plaintiff brings claims under Vermont law, jurisdiction is proper in this court under 28 U.S.C. § 1367(a) because the Vermont

law claims are so related to the claims that confer original jurisdiction that they form part of the same case or controversy.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL BASIS

15. Bimbo's business consists of developing, baking, and distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities. Bimbo requires executed Distributor Agreements from all its Distributors.

16. Bimbo hires Distributors, such as Plaintiffs and members of the putative Classes, to render delivery and merchandising services in furtherance of its business enterprise. Distributors are an integral and necessary part of Bimbo's overall business.

17. On a typical day, Distributors arrive at Bimbo a warehouse early in the morning and load their vehicles with Bimbo products. Distributors then deliver the product to Bimbo's retailer-customers within a specific timeframe. Distributors place Bimbo products on the retailer-customers' shelves, remove stale or rejected product, and organize products on the shelves. Distributors also construct and stock promotional displays.

18. Bimbo markets its bakery and snack products to large mass-market retailers such as Shaw's, Wal-Mart, Hannaford, Dollar General, and others. Bimbo negotiates with such retailers to set virtually all terms of the relationship including, but not limited to, the following:

    a) wholesale and retail prices;

    b) service and delivery requirements;

    c) shelf space and display requirements;

    d) product selection;

    e) promotional pricing;

    f)  control over use and display of promotional materials; and

    g)  content of retailers' print advertising.

19. In some cases, Bimbo negotiates and agrees with customers to manufacture and distribute store brand or private-label bread products.

20. Bimbo often negotiates terms for the marketing and sale of fresh-baked bread and snack products, which are distributed by Plaintiffs and other Class members, at the same time as it negotiates terms for shelf-stable snack products, which are not. The result is that Distributors' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.

21. The legal relationships between Bimbo and the members of the putative Classes are essentially the same in all material respects.

22. Bimbo reserves the right to control Plaintiffs and members of the putative Classes in the performance of the manner and means of their work, and Bimbo in fact exercises this right to control at its sole discretion.

23. Bimbo requires Distributors to strictly follow its directions and to adhere to pricing, policies, and procedures negotiated between Bimbo and its retailer-customers.

24. Bimbo requires Distributors to use Bimbo-issued handheld computers, which allows Bimbo to control product prices and track product deliveries. The prices and other terms of sale are negotiated between Bimbo and its retailer-customers. Through the handheld and other procedures, Bimbo unilaterally adjusts or locks product orders to reflect its sales and marketing goals.

25. Bimbo represents to Plaintiffs and other Distributors that they run their businesses independently, that they have the discretion to use their business judgment, and that they have the

ability to manage their businesses to increase profitability. Contrary to these representations, Bimbo prevents Distributors from exercising independent control over their businesses and denies them meaningful opportunities for entrepreneurship by retaining rights including, but not limited to, the following:

    a)     the right to negotiate product prices;

    b)     the right to negotiate space on retailer-customers' shelves;

    c)     the right to establish promotional sales, which Distributors are required to comply with;

    d)     the right to change Distributors' orders, compel Distributors to pay for products they did not order, and require Distributors to deliver products to retailer-customers;

    e)     the right to discipline and terminate Distributors;

    f)     the right to handle customer complaints against Distributors;

    g)     the right to withhold pay for specified expenses;

    h)     the right to terminate the employment relationship; and

    i)     the right to change standards, guidelines, and operating procedures.

26.     Through these rights, Bimbo prevents Distributors from exercising discretion as to what products to distribute to any particular store; whether to run sales or promotions; and how frequently to service stores. Without such discretion, Distributors are unable to effectively control the profitability of their work.

27.     Compared to Bimbo, Distributors do not contribute significant capital to the parties' relationship. Distributors may purchase or lease delivery vehicles, or use their personal vehicles and trailers, to transport Bimbo products to retailer-customers. By comparison, Bimbo provides

virtually every other business necessity: bakery trays, warehouse space, computer equipment, administrative support, and marketing and advertising activities.

28. Distributors typically use box trucks for larger deliveries, and their lighter vehicles or smaller cars for smaller deliveries and related merchandising activity. Bimbo further requires Distributors to carry commercial insurance coverage and deducts insurance premiums from their pay.

29. Distributors' work for Bimbo does not require any specialized skills or expertise. Distributors are required to accept Bimbo's employment conditions or be terminated.

30. Distributors are Bimbo's employees. As such, Distributors are entitled to the rights, obligations, and privileges of employment, including but not limited to overtime compensation. Despite Bimbo's pervasive control over the means and manner of Distributors' work, Bimbo uniformly misclassifies all Distributors as independent contractors.

31. Because Bimbo pays Distributors for services rendered in the course of their work as employees, these payments constitute wages. Bimbo takes deductions from Distributors' wages for equipment, insurance, lost products, and other regular business expenses arising out of Distributors' work.

32. In their work for Bimbo, Plaintiffs routinely work over 40 hours and often more than 50 hours in a regular seven-day workweek. On information and belief, other members of the putative Classes also routinely work over 40 hours and often more than 50 hours in a regular seven-day workweek. Neither Plaintiffs nor any member of the putative Classes received premium overtime compensation for their work beyond 40 hours per week.

33. Bimbo's mischaracterization of Distributors as independent contractors; its concealment or mischaracterization of the true nature of its relationship with the Distributors; and

the attendant deprivation of substantial rights and benefits of employment are ongoing, unlawful practices by Bimbo that should be enjoined.

## COLLECTIVE ACTION ALLEGATIONS

34. Plaintiffs assert a collective action under the FLSA, alleging FLSA claims on behalf of themselves and all others similarly situated. The proposed FLSA Collective Class is defined as:

> All persons who are performing or have performed work as Distributors for Bimbo Bakeries USA and/or Bimbo Foods Bakeries Distribution LLC in the States of Connecticut, New York, or Vermont under a distributor agreement during the period commencing three years prior to the filing of the Complaint until the court-ordered deadline for such persons to opt into this case.

Plaintiffs reserve the right to modify this definition prior to conditional certification of the FLSA Collective Class.

35. Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiffs' signed consent forms are attached as **Exhibit A.**

36. Plaintiffs and members of the FLSA Collective Class are similarly situated in that they signed a Distributor Agreement; they have substantially identical job requirements and pay provisions; and they are subject to Bimbo's pervasive right to control their daily job functions.

37. Plaintiffs and members of the FLSA Collective Class routinely worked in excess of 40 hours in a seven-day workweek without overtime compensation.

38. Plaintiffs and members of the FLSA Collective Class routinely drove their personal vehicles in the performance of their work for Bimbo and/or drove trucks with a gross motor vehicle weight of 10,000 pounds or less.

39. Upon information and belief, Bimbo knew Plaintiffs and other similarly situated individuals performed work that required overtime pay and knowingly and willfully failed to pay Plaintiffs and similarly situated individual's overtime wages due and owing.

40.     Bimbo accordingly operated under a scheme to deprive Plaintiffs and the FLSA Collective Class of overtime compensation by failing to properly compensate them for all time worked.

41.     In furtherance of this scheme, Bimbo purported to compromise or settle unpaid overtime claims with members of the FLSA Collective Class, including liquidated damages due under those claims, without obtaining judicial approval of the settlements. *See generally Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

42.     Bimbo's violations of the FLSA were willful and caused significant damages to Plaintiffs and the FLSA Collective Class.

43.     Bimbo is liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals. This Court should certify the FLSA Collective Class and direct notice to its members of their right to opt into this litigation and seek further relief. The members of the FLSA Collective Class are readily identifiable through Bimbo's pay records.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure defined as follows:

> All persons who are performing or have performed work as Distributors for Bimbo Bakeries USA and/or Bimbo Foods Bakeries Distribution LLC in the State of Vermont under a Distributor Agreement or during the period commencing six years prior to the filing of this Complaint until the date of court-ordered notice to such persons.

Plaintiffs reserve the right to redefine this Rule 23 Class prior to class certification.

45.     The members of the Rule 23 Class are so numerous that their individual joinder is impracticable. The actual number of members is not precisely known, but on information and

belief, there are approximately 28 individuals in the Rule 23 Class. Bimbo is likely to have or control information making it feasible to determine how many members are in the Rule 23 Class.

46. This case presents several questions of law and fact that are common to both Plaintiffs and members of the Rule 23 Class, and these questions predominate over any questions that affect individual class members. These questions include but are not limited to the following:

a) Whether Bimbo misclassified Plaintiffs and Class Members as independent contractors and whether those persons are properly classified as employees;

b) Whether Bimbo took illegal deductions from Plaintiffs' and Class Members' wages in violation of the Vermont Employment Practices Act;

c) Whether Plaintiffs and Class Members are entitled to injunctive relief against Bimbo's misclassification and illegal deduction practices; and

d) Whether Plaintiffs and Class Members are entitled to declaratory relief stating they are Bimbo's employees.

47. Plaintiffs' claims are typical of all Class Members. When Bimbo misclassified Distributors, that common course of conduct resulted in substantially similar harms to both Plaintiffs and all Class Members, including deprivation of their rights, obligations, and privileges as employees.

48. Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class. Plaintiffs retained experienced counsel with the necessary expertise and resources to prosecute class action litigation. Plaintiffs and their counsel do not anticipate circumstances where Plaintiff's interests would be adverse to those of Class members.

49. Plaintiffs intend to seek certification under Rule 23(b)(2) and (3). A class action is superior to other available methods for the fair and efficient adjudication of Class Members'

claims. The expense and burden of individual litigation makes it impracticable for members of the Rule 23 Class to seek individual redress for Bimbo's wrongful actions. If Class Members were required to bring separate lawsuits, the resulting proceedings would foster judicial inefficiency, create the risk of inconsistent rulings, and cause undue hardship and expense for the litigants. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### Overtime Violations
(by Plaintiffs Individually and on Behalf of the FLSA Collective Class)

50. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

51. Section 207(a)(1) of the FLSA provides in part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

52. For purposes of the FLSA, Bimbo engaged in uniform employment practices with Distributors in Connecticut, New York, and Vermont.

53. Plaintiffs and the other members of the FLSA Collective Class regularly worked more than 40 hours per week but did not receive overtime pay.

54. At all times relevant to the allegations in this Complaint, Bimbo had gross operating revenues in excess of $500,000.

55. Bimbo acted willfully through knowing, deliberate, and intentional failure to pay overtime premium wages, in violation of the FLSA, to Plaintiffs and other members of the FLSA Collective Class.

56. As a result of Bimbo's failure to pay overtime premium wages, Plaintiffs and the other members of the FLSA Collective Class were damaged in an amount to be proved at trial.

57. Plaintiffs and the FLSA Collective Class demand judgment against Bimbo for FLSA overtime premium wages, plus interest, damages, penalties, attorney fees and costs, and any other relief provided by law.

## COUNT II
## DECLARATORY JUDGMENT
(by Plaintiffs Individually and on Behalf of the Rule 23 Class)

58. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

59. Under federal and Vermont law, Defendants have misclassified Plaintiffs and Rule 23 Class Members as independent contractors rather than employees. Pursuant to 28 U.S.C. § 2201 and 12 V.S.A. § 4711 *et seq.*, this Court should issue a declaratory judgment establishing that the Plaintiffs and Collective and Class Members are properly classified as employees, and therefore, they are entitled to all the rights and benefits of employment pursuant to the laws of the United States and Vermont.

## COUNT III
## VIOLATIONS OF VERMONT EMPLOYMENT PRACTICES LAW
(by Plaintiffs Individually and on Behalf of the Rule 23 Class)

60. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

61. As established above, Plaintiffs and the Rule 23 Class Members are employees, not independent contractors.

62. Under 21 V.S.A. § 342(a), it is unlawful for an employer to require or permit an employee to work without paying compensation for all hours worked.

63. Under 21 V.S.A. § 384(b), it is unlawful for an employer to require or permit a non-exempt employee to work in excess of 40 hours per week without paying overtime.

64. Under 21 V.S.A. § 384(c), it is unlawful for an employer to take deductions from wages except for "board, lodging, apparel, rent, or utilities paid or furnished or other items or services or such other conditions or circumstances as may be usual in a particular employer-employee relationship[.]"

    a. Vt. Admin. Code 13-1-101:6 further provides that it is unlawful for an employer to make deductions from wages without fully itemizing the basis for those deductions.

    b. Vt. Admin. Code 13-1-101:10 further provides that it is unlawful for an employer to make deductions for goods or services unless the employee provides written authorization.

65. Bimbo, through its policies and practices as alleged in this Complaint, willfully violated Vermont Employment Practices Law throughout the statutory period, and continuing through the present, as follows:

    a. By failing to pay Plaintiffs and Rule 23 Class Members their earned wages for all hours worked, in violation of 21 V.S.A. § 342(a);

      b.      By failing to pay Plaintiffs and Rule 23 Class Members overtime pay at the rate of time and one-half their regular rate of pay for all hours of overtime worked, in violation of 21 V.S.A. § 384(b);

      c.      By making deductions from Plaintiffs' and Rule 23 Class Members' wages in violation of 21 V.S.A. § 384(c) and Vt. Admin Code 13-1-101:6 and :10, including, but not limited to, deductions for equipment, insurance, lost products, and other regular business expenses arising out of Distributors' work;

      d.      By failing to make, keep, and preserve accurate time records with respect to Plaintiffs and Rule 23 Class Members sufficient to determine their wages and hours in violation of 21 V.S.A. § 393;

      e.      Any other practices in violation of Vermont law.

66.    Bimbo's actions are continuing violations of the Vermont Employment Practices Law.

67.    As a result of Bimbo's violations of the Vermont Employment Practices Law, Plaintiffs and Rule 23 Class Members sustained losses, including unpaid overtime compensation and illegal wage deductions.

68.    Plaintiffs and the Rule 23 Class demand judgment against Bimbo for unpaid overtime wages, illegal wage deductions, and any other pecuniary losses recoverable under the Vermont Employment Practices Law, plus interest, damages, penalties, attorney fees and costs, and any other relief provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief on behalf of themselves, all members of the Classes and all other similarly situated individuals:

a.    Collective action certification under 29 U.S.C. § 216(b), including prompt notice to all those similarly situated of their right to assert FLSA claims in this matter by filing individual consent forms.

b.    Class certification under Rule 23 of the Federal Rules of Civil Procedure and appointment of the undersigned counsel as Class Counsel.

c.    A declaration that Plaintiffs and Collective and Class Members are properly classified as employees and are accordingly entitled to all the rights and benefits of employment pursuant to the laws of the United States and Vermont.

d.    Damages in an amount to be determined at trial for FLSA overtime premium wages, plus interest, liquidated damages, penalties, attorney fees and costs, and any other relief provided by law.

e.    Damages in an amount to be determined at trial for violations of the Vermont Employment Practices Law, plus interest, damages, penalties, attorney fees and costs, and any other relief provided by law.

f.    Any other relief this Court deems just and equitable.

[signature on following page]

Dated this 25th day of October 2022.

                ATTORNEYS FOR PLAINTIFFS

                */s/ Merrill E. Bent*
                Merrill E. Bent
                WOOLMINGTON, CAMPBELL, BENT &
                STASNY, P.C.
                4900 Main Street
                P.O. Box 2748
                Manchester Center, VT 05255
                Telephone: (802) 362-2560
                merrill@greenmtlaw.com

                and

                Shawn J. Wanta
                Scott A. Moriarity
                Nicholas P. DeMaris
                *Attorneys for Plaintiff*
                BAILLON THOME JOZWIAK & WANTA LLP
                100 South Fifth Street, Suite 1200
                Minneapolis, MN 55402
                Telephone: (612) 252-3570
                Fax: (612) 252-3571
                sjwanta@baillonthome.com
                samoriarity@baillonthome.com
                npdemaris@baillonthome.com