## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

ARTHUR PROVENCHER, MICHAEL
McGUIRE, and RONALD MARTEL,
individually and on behalf of all similarly
situated individuals,

Plaintiffs,

v.

BIMBO BAKERIES USA, INC. and BIMBO
FOODS BAKERIES DISTRIBUTION LLC,

Defendants.

Civil Action No. 2:22-cv-00198

### DEFENDANTS' ANSWER TO PLAINTIFFS'
### CLASS AND COLLECTIVE ACTION COMPLAINT AND COUNTERCLAIM

Defendants Bimbo Bakeries USA, Inc. ("BBUSA")[1] and Bimbo Foods Bakeries

Distribution, LLC ("BFBD") (collectively, "Defendants"), by and through their attorneys,

Morgan, Lewis & Bockius LLP, hereby answer the allegations in the Class and Collective Action

Complaint ("Complaint") of Plaintiffs Arthur Provencher, Michael McGuire, and Ronald Martel

(collectively, "Plaintiffs") in accordance with the numbered paragraphs thereof, and assert a

Counterclaim against Plaintiffs as follows:

### NATURE OF ACTION[2]

1.      Except to admit that Plaintiffs purport to assert the stated claims and seek to recover

the stated relief on behalf of themselves and other unidentified individuals and to admit that

---

[1] Plaintiffs Provencher, McGuire, and Martel entered into Distribution Agreements with The Charles Freihofer Baking Company, Inc. ("Freihofer") and/or George Weston Bakeries Distribution Inc. ("GWBD"), which are affiliates and/or predecessors of BFBD, not BBUSA. BBUSA is not a proper defendant in this action.

[2] Defendants restate herein the headings from Plaintiffs' Complaint for the Court's convenience, but do not admit the content of any of the headings.

BBUSA manufactures baked goods, Defendants deny the allegations in Paragraph 1 of the Complaint and specifically deny that Plaintiffs are (or were) misclassified as independent contractors under the Fair Labor Standards Act ("FLSA") or Vermont law, that Plaintiffs' claims are amenable to class or collective action treatment, and that Plaintiffs or those they seek to represent are entitled to any relief.  Defendants further aver that Plaintiffs' overtime claim under the FLSA is foreclosed by the U.S. Court of Appeals for the Second Circuit's decision in *Franze v. Bimbo Foods Bakeries Distribution, LLC, et al.*, 2019 WL 2866168 (S.D.N.Y. July 2, 2019), *aff'd* 826 Fed. Appx. 74 (2d Cir. 2020). Indeed, the core allegations supporting Plaintiffs' FLSA claim are the same as those rejected by the Second Circuit in *Franze*. In the *Franze* Action, two individuals and/or their corporate entities contracted with BFBD (or its predecessors) to sell and deliver products in New York, and each alleged that Defendants misclassified them as independent contractors and that they were owed overtime compensation under the FLSA as a result. Both the Southern District of New York and the Second Circuit disagreed, holding on a fully developed record that the *Franze* Plaintiffs were properly classified as employees under the FLSA's economic realities test. Defendants brought this decision, which is attached hereto as Exhibit A, to Plaintiffs' attention, but Plaintiffs declined to drop their FLSA claim despite the fact that they have alleged that they and all other independent business partners ("IBPs") in Vermont, New York, and Connecticut are essentially the same.

2.     Defendants deny the allegations in Paragraph 2 of the Complaint and specifically deny that Plaintiffs are "employed" by Defendants. Defendants also specifically deny Plaintiffs' attempt to characterize the independent sales/distribution businesses of unidentified "Distributors" and further aver that Plaintiffs' claims with respect to purported "Distributors" whom Plaintiffs may seek to represent are not amenable to class or collective action treatment. Defendants further

aver that to the extent Plaintiffs intend to seek to represent "Distributors" who owned independent sales/distribution businesses in Connecticut or New York, this Court does not have personal jurisdiction over Defendants with respect to their claims. This Court lacks specific personal jurisdiction over Defendants with respect to such individuals because there is no "connection between the forum and the specific claims" of those individuals as required by the controlling Supreme Court precedent set forth in *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773 (2017). *See Canaday v. Anthem Cos*., 9 F.4th 392, 397 (6th Cir. 2021) (holding that *Bristol-Myers* precludes certification of a nationwide FLSA collective); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) (same); *Bethel v. BlueMercury, Inc*., 2022 WL 3594575 (S.D.N.Y. Aug. 22, 2022) (same).

3.       Except to admit that Plaintiffs purport to bring the stated claims on behalf of themselves and other unidentified individuals, Defendants deny the allegations in Paragraph 3 of the Complaint and specifically deny that Plaintiffs' claims are amenable to class action treatment.

4.       Except to admit that Plaintiffs purport to bring the instant action on behalf of themselves and other unidentified individuals, Defendants deny the allegations in Paragraph 4 of the Complaint and specifically deny that Plaintiffs are "similarly situated" to anyone and that their claims are amenable to collective action treatment. Defendants further aver that this Court does not have personal jurisdiction over Defendants with respect to purported "Distributors" whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York.

5.       Except to admit that Plaintiffs purport to bring the instant action on behalf of themselves and other unidentified individuals, Defendants deny the allegations in Paragraph 5 of the Complaint and specifically deny that Plaintiffs are or were employed by Defendants.

Defendants also specifically deny Plaintiffs' attempt to characterize the independent sales/distribution businesses of unidentified "Distributors" and further aver that Plaintiffs' claims with respect to purported "Distributors" whom Plaintiffs may seek to represent are not amenable to class or collective action treatment, and that this Court does not have personal jurisdiction over Defendants with respect to purported "Distributors" whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York.

## PARTIES

6.      Except to admit that Plaintiff Arthur Provencher ("Plaintiff Provencher") purchased the right to distribute bakery products within a sales territory from and entered into a Distribution Agreement ("DA") with Freihofer, a predecessor of BFBD, which governs the relationship between Plaintiff Provencher and BFBD as to those distribution rights, attached hereto as Exhibit B and incorporated into this Answer as though fully set forth herein; to admit that Plaintiff Provencher or his workers may  pick up the bakery products he purchases from BFBD at a sales center located in Williston, Vermont; to admit that BFBD's records indicate that the last known address for Plaintiff Provencher is in South Hero, Vermont; and to admit that Plaintiff Provencher is not entitled to overtime compensation because he is properly classified as an independent contractor under state and federal law or alternatively would be exempt; Defendants deny the allegations in Paragraph 6 of the Complaint.

7.      Except to admit that Plaintiff Ronald Martel ("Plaintiff Martel") purchased the right to distribute bakery products within a sales territory from another IBP and entered into a DA with GWBD, a predecessor of BFBD, which governs the relationship between Plaintiff Martel and BFBD as to those distribution rights, attached hereto as Exhibit C and incorporated into this Answer as though fully set forth herein; to admit that Plaintiff Martel or his workers may pick up

the bakery products he purchases from BFBD at a sales center located in Williston, Vermont; to admit that BFBD's records indicate that the last known address for Plaintiff Martel is in Colchester, Vermont; and to admit that Plaintiff Martel is not entitled to overtime compensation because he is properly classified as an independent contractor under state and federal law or alternatively would be exempt; Defendants deny the allegations in Paragraph 7 of the Complaint.

8.      Except to admit that Plaintiff Michael McGuire ("Plaintiff McGuire") purchased the right to distribute bakery products within a sales territory from another IBP and entered into a DA with GWBD, a predecessor of BFBD, which governs the relationship between Plaintiff McGuire and BFBD as to those distribution rights, attached hereto as Exhibit D and incorporated into this Answer as though fully set forth herein; to admit that Plaintiff McGuire may pick up the bakery products he purchases from BFBD at a sales center located in Williston, Vermont; to admit that BFBD's records indicate that the last known address for Plaintiff McGuire is in Essex, Vermont; and to admit that Plaintiff McGuire is not entitled to overtime compensation because he is properly classified as an independent contractor under state and federal law or alternatively would be exempt; Defendants deny the allegations in Paragraph 8 of the Complaint.

9.      Defendants admit that BBUSA is a Delaware corporation with its principal place of business in Horsham, Pennsylvania, but aver that BBUSA is not a proper defendant in this action.

10.      Defendants admit that BFBD is a Delaware limited liability corporation and that BBUSA is the sole member of BFBD.

11.      Defendants deny the allegations in Paragraph 11 of the Complaint and specifically deny that Plaintiffs are or were employees of Defendants under Vermont or federal law and deny Plaintiffs' attempt to characterize the independent sales/distribution businesses of purported

unidentified "distributors" and further aver that Plaintiffs' claims with respect to purported unidentified "distributors" whom Plaintiffs may seek to represent are not amenable to class or collective action treatment. Defendants further aver that this Court does not have personal jurisdiction over Defendants with respect to the stated claims of purported unidentified "distributors" whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York.

## JURISDICTION AND VENUE

12.     Except to admit that they are authorized to do business in Vermont, Defendants deny the remaining allegations in Paragraph 12 of the Complaint and specifically deny any allegations relating to unidentified "distributors" or other individuals "located in Vermont."

13.     Defendants aver that the allegations in Paragraph 13 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in the first sentence of Paragraph 13 of the Complaint and specifically deny that this Court has personal jurisdiction over them with respect to the purported claims of any individuals whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York. As to the allegations in the second sentence of Paragraph 13 of the Complaint, Defendants admit only that Plaintiffs purport to invoke the jurisdiction of this Court.

14.     Defendants aver that the allegations in Paragraph 14 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Defendants admit only that venue is proper with respect to the claims of the three named Plaintiffs. Defendants specifically deny that they are subject to personal jurisdiction in this Court with respect

to the purported claims of any individual whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York.

## **FACTUAL BASIS**

15.     Except to admit that Plaintiffs voluntarily purchased their rights to distribute bakery products within sales territories directly from other IBPs and BFBD (or its predecessors), that Plaintiffs entered into DAs with predecessors of BFBD, and that those DAs govern the relationship between Plaintiffs and BFBD as to those distribution rights, Defendants deny the allegations in Paragraph 15 of the Complaint. Defendants specifically deny Plaintiffs' attempt to characterize the independent sales/distribution businesses and/or otherwise interpret the purported unidentified "Distributor Agreements" of purported unidentified "Distributors." Defendants further aver that Plaintiffs' claims with respect to purported unidentified "Distributors" whom Plaintiffs may seek to represent are not amenable to class or collective action treatment and that this Court does not have personal jurisdiction over Defendants with respect to purported unidentified "Distributors" whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York.

16.     Defendants deny the allegations in Paragraph 16 of the Complaint.

17.     Defendants deny the allegations in Paragraph 17 of the Complaint.

18.     Defendants deny the allegations in Paragraph 18 of the Complaint, and its subparts (a)-(g), inclusive. Defendants specifically deny Plaintiffs' attempt to characterize or otherwise interpret Plaintiffs' DAs, which are written documents that speak for themselves.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations in Paragraph 20 of the Complaint and specifically deny Plaintiffs' attempt to characterize or otherwise interpret Plaintiffs' DAs, which are written documents that speak for themselves.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint.

22.     Defendants deny the allegations in Paragraph 22 of the Complaint.

23.     Defendants deny the allegations in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     Except to admit that Plaintiffs do in fact run their sales/distribution businesses independently, have the discretion to use their business judgment, and have the ability to manage their sales/distribution businesses to increase profitability, Defendants deny the allegations in Paragraph 25 of the Complaint, and its subparts (a)-(i), inclusive.

26.     Defendants deny the allegations in Paragraph 26 of the Complaint and specifically deny Plaintiffs' attempt to characterize or otherwise interpret Plaintiffs' DAs, which are written documents that speak for themselves.

27.     Except to admit that Plaintiffs have discretion to purchase and/or lease vehicles in connection with operating their independent sales/distribution businesses, Defendants deny the allegations in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations in Paragraph 28 and specifically deny Plaintiffs' attempt to characterize the independent sales/distribution businesses of purported unidentified "Distributors."

29.     Defendants deny the allegations in Paragraph 29 of the Complaint.

30.     Defendants deny the allegations in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations in Paragraph 31 of the Complaint and specifically deny Plaintiffs' attempt to characterize or otherwise interpret Plaintiffs' DAs, which are written documents that speak for themselves and deny Plaintiffs' attempt to characterize the independent sales/distribution businesses of purported unidentified "Distributors."

32.     Except to admit that Plaintiffs are not and have not been entitled to overtime compensation because they are properly classified as independent contractors under applicable federal and state law, among other reasons, Defendants deny the allegations in Paragraph 32 of the Complaint.

33.     Defendants deny the allegations in Paragraph 33 of the Complaint.

## COLLECTIVE ACTION ALLEGATIONS

34.     Except to admit that Plaintiffs purport to bring the stated claims on behalf of unidentified individuals, as defined by Plaintiffs in Paragraph 34, who have expressed no interest in joining this action to date, Defendants deny the allegations in Paragraph 34 of the Complaint and specifically deny that Plaintiffs' proposed collective is understandable or ascertainable and that their claims are amenable to collective action treatment.

35.     Defendants deny the allegations in Paragraph 35 of the Complaint and specifically deny that the alleged consent forms are attached to the Complaint.

36.     Defendants deny the allegations in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations in Paragraph 38 of the Complaint.

39.     Defendants deny the allegations in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations in Paragraph 40 of the Complaint.

41.     Defendants deny the allegations in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations in Paragraph 43 of the Complaint.

## CLASS ACTION ALLEGATIONS

44.     Except to admit that Plaintiffs purport to bring an action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of unidentified individuals, as defined by Plaintiffs in Paragraph 44 of the Complaint, Defendants deny the allegations in Paragraph 44 of the Complaint and specifically deny that Plaintiffs' proposed class is understandable or ascertainable and that their claims are amenable to class action treatment.

45.     Defendants deny the allegations in Paragraph 45 of the Complaint and specifically deny that it is impracticable to join the claims of "approximately 28 individuals" whom Plaintiffs seek to represent and further specifically deny that Plaintiffs' claims are amenable to class action treatment. *See* Defendants' Motion to Strike Class Claims Under Fed. R. Civ. P. 12(f) (ECF No. 17), at 12-14.

46.     Defendants deny the allegations in Paragraph 46 of the Complaint and all of its subparts and specifically deny that Plaintiffs' claims are amenable to class action treatment.

47.     Defendants deny the allegations in Paragraph 47 of the Complaint and specifically deny that Plaintiffs' claims are amenable to class action treatment.

48.     Except to aver that they lack knowledge or information sufficient to form a belief as to Plaintiffs' commitment to pursuing this action or the competency of Plaintiffs' selected counsel, Defendants deny the allegations in Paragraph 48 of the Complaint and specifically deny that Plaintiffs' claims are amenable to class action treatment.

49.     Except to admit that Plaintiffs purport to bring an action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of unidentified individuals, Defendants

deny the allegations in Paragraph 49 of the Complaint and specifically deny that it is impracticable to join the individual claims of "approximately 28" individuals whom Plaintiffs seek to represent, and that Plaintiffs' claims are amenable to class action treatment. *See* Defendants' Motion to Strike Class Claims Under Fed. R. Civ. P. 12(f) (ECF No. 17), at 12-14.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### Overtime Violations

50.     Defendants incorporate by reference all of their previous responses to the Complaint as though fully set forth herein.

51.     Except to admit that Paragraph 51 of the Complaint contains excerpts from Section 207(a)(1) of the FLSA, Defendants deny any characterization of Section 207(a)(1) of the FLSA contrary to its statutory text. Defendants deny any remaining allegations in Paragraph 51 of the Complaint.

52.     Defendants deny the allegations in Paragraph 52 of the Complaint.

53.     Defendants deny the allegations in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations in Paragraph 54 of the Complaint because they have no way of knowing what time period Plaintiffs believe is relevant.

55.     Defendants deny the allegations in Paragraph 55 of the Complaint.

56.     Defendants deny the allegations in Paragraph 56 of the Complaint.

57.     Except to admit that Plaintiffs seek the stated remedies on behalf of unidentified individuals who have expressed no interest in joining this action to date, Defendants deny the allegations in Paragraph 57 of the Complaint and specifically deny that Plaintiffs' claims are amenable to collective action treatment.

## COUNT II
### DECLARATORY JUDGMENT

58.     Defendants incorporate by reference all of their previous responses to the Complaint as though fully set forth herein.

59.     Except to admit that Plaintiffs seek the stated remedies, Defendants deny the allegations in Paragraph 59 of the Complaint and specifically deny that Plaintiffs are or were misclassified under federal or Vermont law and that Plaintiffs' claims are amenable to class or collective action treatment. Defendants further aver that the Court does not have personal jurisdiction over Defendants with respect to purported unidentified "Collective and Class Members" whom Plaintiffs may seek to represent who owned independent sales/distribution businesses in Connecticut or New York.

## COUNT III
### VIOLATIONS OF VERMONT EMPLOYMENT PRACTICES LAW

60.     Defendants incorporate by reference all of their previous responses to the Complaint as though fully set forth herein.

61.     Defendants deny the allegations in Paragraph 61 of the Complaint.

62.     Defendants aver that the allegations in Paragraph 62 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 62 of the Complaint to the extent that Plaintiffs' characterization of 21 V.S.A. § 342(a) is inconsistent with the statutory text.

63.     Defendants aver that the allegations in Paragraph 63 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 63 of the Complaint to the extent that Plaintiffs' characterization of 21 V.S.A. § 384(b) is inconsistent with the statutory text.

64.     Defendants aver that the allegations in Paragraph 64 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 64 of the Complaint, and its subparts (a)-(b) to the that extent Plaintiffs' characterization of 21 V.S.A. § 384(c) and the stated provisions of the Vermont Administrative Code are inconsistent with their text.

65.     Defendants deny the allegations in Paragraph 65 of the Complaint, and its subparts (a)-(e), inclusive, and specifically deny that Plaintiffs' claims are amenable to class action treatment.

66.     Defendants deny the allegations in Paragraph 66 of the Complaint.

67.     Defendants deny the allegations in Paragraph 67 of the Complaint and specifically deny that Plaintiffs' claims are amenable to class action treatment.

68.     Except to admit that Plaintiffs seek the stated remedies on behalf of unidentified individuals, Defendants deny the allegations in Paragraph 68 of the Complaint and specifically deny that Plaintiffs' claims are amenable to class action treatment.

## PRAYER FOR RELIEF

Defendants deny all the allegations and assertions contained in Plaintiffs' unnumbered Prayer for Relief paragraph of the Complaint (as well as its subparts (a)-(f), inclusive) and specifically deny that Plaintiffs and those whom they purport to represent are entitled to any relief.

## GENERAL DENIAL

To the extent that Defendants have not specifically admitted above any allegations of the Complaint, they are denied.

## DEFENDANTS' DEFENSES

Defendants have not completed their investigation of the facts of this case, have not completed discovery in this matter, and have not completed their preparation for trial. The defenses

stated herein are based on Defendants' knowledge, information, and belief at this time, and Defendants specifically reserve the right to modify, amend, or supplement their defenses at any time as well as modify, amend or supplement their responses above.

Without conceding that they bear the burden of proof or persuasion as to any one of them, Defendants assert the following separate defenses to the Complaint:

### FIRST DEFENSE
### (Failure to State a Cause of Action)

1.     The Complaint fails to state a claim upon which relief can be granted for one or more of the claims of Plaintiffs and/or some or all of the individuals whom they purport to represent.

### SECOND DEFENSE
### (Statute of Limitations)

2.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, by the applicable statutes of limitation governing these claims.

### THIRD DEFENSE
### (Lack of Standing)

3.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, because some or all of these individuals lack standing to seek some or all of the requested relief.

### FOURTH DEFENSE
### (Compensation)

4.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, because they have already received all

compensation due to them under applicable federal and state law.

### FIFTH DEFENSE
### (Estoppel, Ratification, Laches, and Unclean Hands)

5.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, by the doctrines of estoppel, ratification, laches, and/or unclean hands.

### SIXTH DEFENSE
### (Failure to Mitigate)

6.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that Plaintiffs and/or some or all of the individuals whom they purport to represent have failed to mitigate their damages or otherwise avoid harm.

### SEVENTH DEFENSE
### (Damages)

7.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, because they have sustained no damages.

### EIGHTH DEFENSE
### (Defendants Not The Employer)

8.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that Defendants did not employ (either jointly or individually) Plaintiffs and/or some or all of the individuals whom they purport to represent, and, therefore, are not proper defendants for such claims.

### NINTH DEFENSE
### (Absence of Employment Status)

9.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom

they purport to represent are barred, in whole or in part, because Plaintiffs and/or some or all of the individuals whom they purport to represent were at all relevant times not covered by the FLSA or Vermont wage and hour laws because they are not employees of Defendants (either individually or jointly).

**TENTH DEFENSE**
**(Overtime Exemptions)**

10.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, because Plaintiffs and/or some or all of the individuals whom they purport to represent were at all relevant times exempt from the overtime requirements of federal and Vermont laws pursuant to, *inter alia*, the "administrative," "outside sales," "executive,"  or "combination" overtime exemptions and/or the Motor Carrier Act exemption, even if one or more are deemed to be employees (which Defendants dispute).

**ELEVENTH DEFENSE**
**(Adequate Remedy at Law)**

11.     Plaintiffs and/or some or all of the individuals they purport to represent are not entitled to equitable relief insofar as some or all of these individuals have an adequate remedy at law.

**TWELFTH DEFENSE**
**(Waiver, Release)**

12.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals they purport to represent are barred, in whole or in part, to the extent some or all of these individuals have released or waived such claims.

**THIRTEENTH DEFENSE**
**(Good Faith)**

13.     Defendants have at all times acted in good faith and have had reasonable grounds

for believing that any alleged acts and omissions were not violations of the FLSA and/or Vermont law with respect to Plaintiffs and/or some or all of the individuals they purport to represent.

## FOURTEENTH DEFENSE
## (Reliance)

14.     Defendants have at all times acted in good faith and have had reasonable grounds for believing that any alleged acts and omissions were not violations of the FLSA and/or Vermont law with respect to Plaintiffs and/or some or all of the individuals whom they purport to represent.

## FIFTEENTH DEFENSE
## (No Willful Violation)

15.     Plaintiffs and/or some or all of the individuals whom they purport to represent cannot meet their burden to establish that Defendants' alleged unlawful failure to pay overtime was a willful violation of the FLSA and/or Vermont law.

## SIXTEENTH DEFENSE
## (No Liquidated Damages)

16.     Plaintiffs and/or some or all of the individuals whom they purport to represent fail to allege facts sufficient to support an award of liquidated damages against Defendants.

## SEVENTEENTH DEFENSE
## (Arbitration)

17.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that they are subject to mandatory dispute resolution and arbitration.

## EIGHTEENTH DEFENSE
## (*Di Minimis* Damages)

18.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that the amount of time for

which payment is sought, if unpaid time can be established (which Defendants deny), was *de minimis*.

### NINETEENTH DEFENSE
### (Preliminary and Postliminary Activities)

19.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, as to all hours during which Plaintiffs and/or the individuals whom they purport to represent were engaged in activities that were preliminary or postliminary to their principal job activities, even if they were employees (which they are/were not).

### TWENTIETH DEFENSE
### (Lack of Knowledge)

20.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, as to all hours allegedly worked of which Defendants lacked actual or constructive knowledge.

### TWENTY-FIRST DEFENSE
### (Not Similarly Situated)

21.     Plaintiffs are not similarly situated to some or all of the individuals whom they purport to represent or to each other for purposes of the FLSA and/or applicable state law.

### TWENTY-SECOND DEFENSE
### (Individual Questions)

22.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent present inquiries for which individual questions predominate and,

accordingly, are not appropriate for class action treatment.

## TWENTY-THIRD DEFENSE
### (Lack of Common Claims)

23.     Some or all of Plaintiffs' claims are neither common to nor typical of those of some or all of the individuals whom they purport to represent and, accordingly, are not appropriate for class action treatment.

## TWENTY-FOURTH DEFENSE
### (Lack of Ascertainable Class)

24.     The putative collective and class action members whom Plaintiffs purport to represent are not ascertainable.

## TWENTY-FIFTH DEFENSE
### (Joinder Not Impracticable)

25.     Joinder of the individual claims of the putative class members whom Plaintiffs purport to represent is not impracticable.

## TWENTY-SIXT DEFENSE
### (Lack of Superiority)

26.     Some or all of Plaintiffs' claims are not maintainable for, among other reasons, failure to satisfy the requirement of superiority and, accordingly, are not appropriate for class action treatment.

## TWENTY-SEVENTH DEFENSE
### (Conflict of Interest)

27.     Certain interests of the proposed class action members are in conflict with the

interests of Plaintiffs and/or other proposed class action members whom they purport to represent.

## TWENTY-EIGHTH DEFENSE
### (Written Authorization)

28.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent Plaintiffs and/or some or all of the individuals whom they purport to represent provided written authorization for alleged deductions.

## TWENTY-NINTH DEFENSE
### (Payments Not Wages)

29.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that the payments received by Plaintiffs and/or some or all of the individuals are and were not wages.

## THIRTIETH DEFENSE
### (Preemption)

30.      Some or all of Plaintiffs' state law claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that they are preempted by federal law.

## THIRTY-FIRST DEFENSE
### (Valid Agreement)

31.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that they are predicated on valid DAs.

## THIRTY-SECOND DEFENSE
### (Voluntary Payment)

32.      Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom

they purport to represent are barred, in whole or in part, by the voluntary payment doctrine.

## THIRTY-THIRD DEFENSE
### (Lack of Personal Jurisdiction)

33.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, on the grounds that the Court lacks personal jurisdiction over Defendants with regard to the claims of some of all of the individuals whom Plaintiffs purport to represent.

## THIRTY-FOURTH DEFENSE
### (No Recoupment)

34.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that Plaintiffs and/or some or all of the individuals whom they purport to represent cannot recoup from Defendants amounts paid to individuals and/or entities other than Defendants in consideration for distribution rights.

## THIRTY-FIFTH DEFENSE
### (No Agreement)

35.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are barred, in whole or in part, to the extent that there was no agreement between Plaintiffs and/or some or all of the individuals whom they purport to represent whereby BFBD and/or its affiliates agreed to pay Plaintiffs and/or the individuals whom they purport to represent the monies they seek in this litigation.

## THIRTY-SIXTH DEFENSE
### (Offset)

36.     If any damages have been sustained by some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent, which is denied, BFBD and/or its affiliates are entitled to offset all payments or benefits made available to Plaintiffs and/or some

or all of the individuals whom they purport to represent, as well as all obligations of Plaintiffs and/or some or all of the individuals whom they purport to represent owed to BFBD and/or its affiliates, against any award that may be entered against Defendants.

### THIRTY-SEVENTH DEFENSE
### (Indemnity)

37.     Some or all of Plaintiffs' claims and/or those of some or all of the individuals whom they purport to represent are subject, in whole or in part, to claims for indemnity.

**WHEREFORE**, Defendants respectfully submit that the claims asserted against them in the Complaint should be dismissed, with prejudice, in their entirety, and that Defendants should be awarded their attorneys' fees and costs incurred in defending this action as well as such other and further relief as the Court may deem just and proper. As set forth in BFBD's Counterclaims, this includes, but is not limited to, in the event of a finding that Plaintiffs, or any putative class/collective member, was an employee of BFBD and/or its affiliates:

1.  Rescinding the DA with such individual, and granting any and all other legal and equitable relief that the Court finds just and reasonable, including, but not to, restitution of  any revenue, profits, and/or earnings that Counterclaim Defendants retained by virtue of their status as independent contractors to offset, reduce, or nullify any damages that they may be awarded if the Court deems them to be employees, as well as any additional award of damages to the extent that such damages exceed any offset, including (but not limited to): (1) revenue Counterclaim Defendants generated through the sale of the products purchased from BFBD or its affiliates; (2) any income that Counterclaim Defendants received pursuant to the Advertising Agreements; and (3) revenue generated by Counterclaim Defendants from any sale and/or partial sale of the distribution rights; or

2.   Awarding any other such relief as the Court may deem just and proper.

## **<u>RESERVATION OF RIGHTS</u>**

Defendants reserve the right to assert such additional defenses that may appear and prove applicable during the course of this litigation or otherwise amend their response to the Complaint.

## COUNTERCLAIM

Defendant Bimbo Foods Bakeries Distribution, LLC ("BFBD"), by and through its undersigned counsel, asserts the following counterclaim against Plaintiff Arthur Provencher ("Counterclaim Defendant Provencher"), Plaintiff Ronald Martel ("Counterclaim Defendant Martel"), and Plaintiff Michael McGuire ("Counterclaim Defendant McGuire") (collectively, "Counterclaim Defendants"). BFBD incorporates by reference all of the defined terms as set forth in its Answer, *supra*.

## PARTIES AND JURISDICTION

1.     BFBD is a Delaware limited liability company with a principal place of business at 225 Business Center Drive, Horsham, Pennsylvania.

2.     On information and belief, Counterclaim Defendant Provencher resides in South Hero, Vermont.

3.     On information and belief, Counterclaim Defendant Martel resides in Colchester, Vermont.

4.     On information and belief, Counterclaim Defendant McGuire resides in Essex, Vermont.

5.     This Court has jurisdiction over the Counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure, as the Counterclaim arises out of the same transactions that are the subject of Plaintiffs' Complaint. Specifically, both the Counterclaim and the allegations in the Complaint concern BFBD's and Counterclaim Defendants' respective obligations under the DAs that Counterclaim Defendants entered into with predecessors of BFBD.

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as the Counterclaim arises out of the same nucleus of operative facts alleged in the Complaint and is so related to the Complaint that the Counterclaim forms part of the same case or controversy under

Article III of the United States Constitution. Specifically, both the Counterclaim and the allegations in the Complaint concern BFBD's and Counterclaim Defendants' respective obligations under the DAs that Counterclaim Defendants entered into with predecessors of BFBD.

7.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1441(a) because a substantial part of the alleged events giving rise to Counterclaim Defendants' claims are alleged to have occurred in this judicial district.

## **FACTS**

8.      On or about April 1, 1996, for the sum of $38,880, Counterclaim Defendant Provencher purchased the right to sell certain bakery products within a geographic territory from, upon information and belief, a predecessor of BFBD.

9.      On or about April 1, 1996, Counterclaim Defendant Provencher entered into a DA with Freihofer that was subsequently assigned to BFBD (the "Provencher Agreement"), attached hereto as Exhibit B and incorporated into this Counterclaim as though fully set forth herein.

10.      The Provencher Agreement governs the relationship between Counterclaim Defendant Provencher and BFBD as to those distribution rights.

11.      The Provencher Agreement states that "[t]he parties intend to create an independent contractor relationship and [that] it is the essence of th[e] Agreement that [Counterclaim Defendant Provencher] is an independent contractor for all purposes." *See* Exhibit B, § 2.4. The Provencher Agreement further provides that Counterclaim Defendant Provencher "has the right to operate the business as [he] chooses, and shall bear the risks and costs of operating such business." *Id.*

12.      The Provencher Agreement also states that "[i]t is expressly understood that [Counterclaim Defendant Provencher] has no claim, or right under any circumstances, to any

benefits or other compensation currently paid by [BFBD] to [its] employees, or hereafter declared by [BFBD] for the benefit of [its] employees." *Id.*

13.     Since on or about April 1, 1996, pursuant to the Provencher Agreement, Counterclaim Defendant Provencher has owned a sales/distribution business as an independent contractor, whereby he or his workers purchase products from BFBD (or its predecessor) and, thereafter, he or his workers sell such products to his customers located within his sales territory, among other business activities.

14.     Pursuant to the Provencher Agreement, Counterclaim Defendant Provencher has retained (and continues to retain) the revenue generated through the operation of his sales/distribution business, including, but not limited to, the difference between the price of the products he purchased from BFBD or its predecessor and the price at which he sold them to his customers.

15.     On or about April 1, 1996, for the sum of $54,440.00, Counterclaim Defendant Martel purchased the right to sell certain bakery products within a geographic territory from Freihofer, a predecessor of BFBD.

16.     On or about April 1, 1996, Counterclaim Defendant Martel entered into a DA with Friehofer, a predecessor of BFBD, which governed the relationship between Counterclaim Defendant Martel until on or about October 2, 2006, when he sold his distribution rights to GWBD, a predecessor of BFBD for a profit as further described *infra* ¶ 41.

17.     On or about October 27, 2008, Counterclaim Defendant Martel, for the sum of $96,375.00, purchased the right to sell certain bakery products within a different geographic territory from another IBP.

18.     On or about October 27, 2008, Counterclaim Defendant Martel entered into a DA with GWBD, which was subsequently assigned to BFBD (the "Martel Agreement"), attached hereto as Exhibit C and incorporated into this Counterclaim as though fully set forth herein. The Martel Agreement governs the relationship between Counterclaim Defendant Martel and BFBD as to those distribution rights.

19.     The Martel Agreement states that "[t]he parties intend to create an independent contractor relationship and [that] it is the essence of th[e] Agreement that [Counterclaim Defendant Martel] is an independent contractor for all purposes . . . ." *See* Exhibit C, § 2.3. The Martel Agreement further provides that Counterclaim Defendant Martel "has the right to operate the business as [he] chooses, and shall bear the risks and costs of operating such business." *Id.*

20.     The Martel Agreement also states that "[i]t is expressly understood that [Counterclaim Defendant Martel] has no claim, or right under any circumstances, to any benefits or other compensation currently paid by [BFBD] to [its] employees, or hereafter declared by [BFBD] for the benefit of [its] employees." *Id.*

21.     From on or about April 1, 1996 to October 2, 2006 and from October 27, 2008 to the present, pursuant to the 1996 DA and the Martel Agreement, Counterclaim Defendant Martel has owned a sales/distribution business as an independent contractor, whereby he or his workers purchase products from BFBD or its predecessor and, thereafter, he or his workers sell such products to his customers located within his sales territory, among other business activities.

22.     Pursuant to the Martel Agreement, Counterclaim Defendant Martel has retained (and continues to retain) the revenue generated through the operation of his sales/distribution business, including, but not limited to, the difference between the price of the products he purchased from BFBD (or its predecessor) and the price at which he sold them to his customers.

23.     On or about July 19, 2004, for the sum of $68,919.00, Counterclaim Defendant McGuire purchased the right to sell certain bakery products within a specific geographic territory from GWBD, a predecessor of BFBD.

24.     On or about July 19, 2004, Counterclaim Defendant McGuire entered into a DA with GWBD, a predecessor of BFBD, which governed the relationship between Counterclaim Defendant McGuire until on or about August 14, 2006, when he sold his distribution rights to another IBP for a profit, as described more fully below *infra* ¶ 42.

25.     On or about August 14, 2006, Counterclaim Defendant McGuire, for the sum of $90,892.00, purchased the right to sell certain bakery products within a different specific geographic territory from another IBP.

26.     On or about August 14, 2006, Counterclaim Defendant McGuire entered into a DA with GWBD, which was subsequently assigned to BFBD (the "McGuire Agreement"), attached hereto as Exhibit D and incorporated into this Counterclaim as though fully set forth herein. The McGuire Agreement governs the relationship between Counterclaim Defendant McGuire and BFBD as to those distribution rights.

27.     The McGuire Agreement states that "[t]he parties intend to create an independent contractor relationship and [that] it is the essence of th[e] Agreement that [Counterclaim Defendant McGuire] is an independent contractor for all purposes . . . ." *See* Exhibit D, § 2.3. The McGuire Agreement further provides that Counterclaim Defendant McGuire "has the right to operate the business as [he] chooses, and shall bear the risks and costs of operating such business." *Id.*

28.     The McGuire Agreement also states that "[i]t is expressly understood that [Counterclaim Defendant Provencher] has no claim, or right under any circumstances, to any

benefits or other compensation currently paid by [BFBD] to [its] employees, or hereafter declared by [BFBD] for the benefit of [its] employees." *Id.*

29.     Since on or about July 19, 2004, pursuant to the 2004 DA and the McGuire Agreement, Counterclaim Defendant McGuire has owned a sales/distribution business as an independent contractor, whereby he or his workers purchase products from BFBD or its predecessor and, thereafter, he or his workers sell such products to his customers located within his sales territory, among other business activities.

30.     Pursuant to the McGuire Agreement, Counterclaim Defendant McGuire has retained (and continues to retain) the revenue generated through the operation of his sales/distribution business, including, but not limited to, the difference between the price of the products he purchased from BFBD (or its predecessor) and the price at which he sold them to his customers.

31.     Upon information and belief, by nature of their status as independent contractors, Counterclaim Defendants also availed themselves of additional opportunities for profit, including, but not limited to, payments from BFBD and/or its predecessors that were made pursuant to voluntary advertising agreements that Counterclaim Defendants entered into with BFBD or its predecessors and payments from other IBPs or BFBD and/or its predecessors for the sales of all or portions of their distribution rights.

32.     Specifically, pursuant to Advertising Agreements entered into on or about January 12, 2004 and October 27, 2008, BFBD and its predecessor have rented advertising space on Counterclaim Defendant Martel's clothing and trucks for the advertisement of Bimbo-branded products. *See* Martel 2004 Advertising Agreement, attached hereto as Exhibit E, §§ 1, 2; Martel 2008 Advertising Agreement, attached hereto as Exhibit F, §§ 1, 2.

33.     Pursuant to Advertising Agreements entered into on or about July 19, 2004 and August 14, 2006, BFBD and its predecessor have rented advertising space on Counterclaim Defendant McGuire's clothing and trucks for the advertisement of Bimbo-branded products. *See* McGuire 2004 Advertising Agreement, attached hereto as Exhibit G, §§ 1, 2; McGuire 2006 Advertising Agreement, attached hereto as Exhibit H, §§ 1, 2.

34.     BFBD and its predecessor have paid Counterclaim Defendants Martel and McGuire $70 per week in exchange for the advertising space. *See* Exhibits E-H, §§ 1, 2.

35.     On information and belief, since on or about January 12, 2004, Counterclaim Defendant Martel has received over an estimated $61,950.00 from BFBD (or its predecessors) as a result of the Advertising Agreements.

36.     On information and belief, since on or about July 19, 2004, Counterclaim Defendant McGuire has received over an estimated $67,620.00 from BFBD (or its predecessors) as a result of the Advertising Agreements.

37.     Only independent contractors can enter into an Advertising Agreement. No employees of BFBD or its affiliates can enter into an Advertising Agreement, and therefore are unable to reap the substantial profits from such Agreements as described above.

38.     Absent the enforceability of the DAs and the Advertising Agreements, which Counterclaim Defendants could only enter into by virtue of their status as independent contractors, BFBD and its predecessors would have been under no obligation to pay Counterclaim Defendants to advertise and BFBD and its predecessors could have reserved such earnings for itself.

39.     Pursuant to their respective DAs, and as a result of their status as independent contractors, Counterclaim Defendants had the right to sell all or parts of their distribution rights and retain the revenue from such sales. Exhibits B-D, §§ 6.1, 6.3.

40.     As a result of his status as an independent contractor, Counterclaim Defendant Provencher has sold certain exclusive distribution rights to Freihofer Sales Company, Inc. and Bimbo Foods Bakeries Distribution, Inc., predecessors of BFBD. *See* 2002 Bill of Sale, attached hereto as Exhibit I; 2013 Bill of Sale, attached hereto as Exhibit J.

41.     As a result of his status as an independent contractor, Counterclaim Defendant Martel has sold certain exclusive distribution rights to another IBP and to Freihofer Sales Company, Inc. and GWBD, predecessors of BFBD. *See* 1999 Bill of Sale, attached hereto as Exhibit K; 2001 Bill of Sale, attached hereto as Exhibit L; 2006 Bill of Sale, attached hereto as Exhibit M.

42.     As a result of his status as an independent contractor, on or about August 14, 2006, Counterclaim Defendant McGuire sold certain exclusive distribution rights to another IBP. *See* 2006 Bill of Sale, attached hereto as Exhibit N.

43.     In total, as a result of their status as independent contractors, Counterclaim Defendants Provencher, Martel, and McGuire have sold certain of their exclusive distribution rights for the sums of $27,590.00, $112,505.00, and $83,074.00, respectively. *See* Exhibits I-N.

44.     By retaining the revenue generated by their independent-contractor status, Counterclaim Defendants benefitted from the terms of their DAs and Advertising Agreements, and Counterclaim Defendants' course of conduct continually reaffirmed and represented to BFBD and its predecessors Counterclaim Defendants' status as independent contractors.

45.     Despite the substantial revenue they retained (and continue to retain) as a result of their independent-contractor status, which they retained (and continue to retain) at the expense of BFBD and its predecessors, Counterclaim Defendants now seek additional payments in the form of overtime compensation and reimbursement for allegedly unauthorized so-called "wage"

"deductions" based on the allegation that they are employees, after representing for years in their DAs that in fact they are independent contractors. Counterclaim Defendants also seek damages in the form of statutory penalties and liquidated damages for alleged violations of the FLSA and Vermont law, attorneys' fees, and other equitable relief.

## COUNT I – UNJUST ENRICHMENT
### (Against All Counterclaim Defendants)

46.     BFBD repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

47.     As a condition of retaining the benefits received pursuant to their DAs, Counterclaim Defendants agreed that they were independent contractors of BFBD and/or its predecessors and were not entitled to wages or other employment-related benefits.

48.     In the event that the Court finds that Counterclaim Defendants should have been classified as employees of BFBD and/or its affiliates (which the Court should not), and if the Court finds that BFBD has no legal remedy to recoup the various payments made to Counterclaim Defendants pursuant to their DAs and Advertising Agreements, Counterclaim Defendants would be unjustly enriched.

49.     This Court should find that the Counterclaim Defendants were properly classified as independent contractors and not employees of BFBD or its affiliates. In the alternative, if the Court finds that Counterclaim Defendants were employees of BFBD and/or its affiliates (which it should not), the Court should find that BFBD and its predecessors conferred a benefit to Counterclaim Defendants, who were enriched as a result of their status as independent contractors, including but not limited to, by: retaining the revenue from the products sold; retaining the revenue received under Advertising Agreements; and enjoying the right to sell all or parts of their distribution rights and retaining the revenue from such sales.

50.     Counterclaim Defendants have been enriched at BFBD and its predecessors' expense because, pursuant to the financial arrangement defined in the DAs, Counterclaim Defendants purchased products from BFBD or its affiliates at a given price and sold these products to Counterclaim Defendants' customers at a higher price, retaining as revenue the difference between the two prices. Absent Counterclaim Defendants' status as independent contractors and the enforceability of their DAs, BFBD or its affiliates would have retained the rights to sell products to the same customers and thus received revenue from such customers, in addition to retaining other rights and benefits afforded to Counterclaim Defendants as independent contractors, including but not limited to: (1) any payments pursuant to Advertising Agreements, which BFBD and its predecessors would not have paid if Counterclaim Defendants were employees; and (2) any payments for any sales of all or part of any Counterclaim Defendants' distribution rights.

51.     If the Court finds that Counterclaim Defendants should have been classified as employees of BFBD and/or its affiliates (which it should not) and, pursuant to this finding, awards Counterclaim Defendants some or all of the damages demanded in the Complaint (which it should not), Counterclaim Defendants would be unjustly enriched at BFBD's and/or its affiliates' expense.  Specifically, Counterclaim Defendants would be unjustly enriched by receiving wages available to employees while at the same time retaining the monies they received as a result of their status as independent contractors, which, if not for Counterclaim Defendants' independent-contractor status, BFBD and/or its predecessors could have reserved for themselves.  BFBD has no adequate remedy at law to recoup these revenues.

52.     If the Court finds that Counterclaim Defendants should have been classified as employees of BFBD and/or its affiliates (which it should not) and, pursuant to this finding, awards

Counterclaim Defendants some or all of the damages demanded in the Complaint (which it should not), equity and good conscience require that BFBD be awarded the value of earnings associated with Counterclaim Defendants' independent-contractor status in order to offset, reduce, or nullify any award of wages and/or damages, liquidated damages, and any other liabilities that Counterclaim Defendants may be entitled to as purported employees. The value of such earnings includes, but is not limited to: (1) revenue Counterclaim Defendants generated through the sale of the products they purchased from BFBD or its affiliates; (2) income that Counterclaim Defendants received pursuant to the Advertising Agreements entered into with BFBD or its predecessors; and (3) revenue that Counterclaim Defendants received as a result of having the ability to sell all or part of their distribution rights.

**WHEREFORE**, BFBD respectfully requests judgment the Court:

1. Rescind the DAs, and grant any and all other legal and equitable relief the Court finds just and reasonable, including, but not limited to, restitution of  any revenue, profits, and/or earnings that Counterclaim Defendants retained by virtue of their status as independent contractors to offset, reduce, or nullify any damages that they may be awarded if the Court deems them to be employees, as well as any additional award of damages to the extent that such damages exceed any offset, including (but not limited to): (1) revenue Counterclaim Defendants generated through the sale of the products purchased from BFBD or its affiliates; (2) any income that Counterclaim Defendants received pursuant to the Advertising Agreements; and (3) revenue generated by Counterclaim Defendants from any sale and/or partial sale of the distribution rights; or

2. Award any other such relief as the Court may deem just and proper.

Dated:  January 23, 2023

/s/   *Elizabeth K. Rattigan*

**MORGAN, LEWIS & BOCKIUS LLP**
Keri L. Engelman*
Mary Grace Parsons*
One Federal Street
Boston, MA 02110-1726
(617) 951-8000
keri.engelman@morganlewis.com
marygrace.parsons@morganlewis.com

Michael J. Puma*
1701 Market St.
Philadelphia, PA 19103-2921
(215) 963-5000
michael.puma@morganlewis.com


**DOWNS RACHLIN MARTIN PLLC**
Elizabeth K. Rattigan
199 Main Street
Burlington, VT 05401
(802) 846-8373
Fax: (802) 862-7512
erattigan@drm.com


*Admitted Pro Hac Vice*


*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2023, the foregoing Answer to Plaintiffs' Class Action Complaint And Counterclaim is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

*/s/ Elizabeth K. Rattigan*
Elizabeth K. Rattigan