UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

|  |  |
|---|---|
| ARTHUR PROVENCHER, MICHAEL MCGUIRE, and RONALD MARTEL, individually and on behalf of all similarly situated individuals,<br><br>                    Plaintiffs,<br>and<br><br>MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>                    [Proposed] Intervenor,<br><br>              v.<br><br>BIMBO BAKERIES USA, INC. and BIMBO FOODS BAKERIES DISTRIBUTION LLC,<br><br>                    Defendants. | Civil Action No. 2:22-cv-00198-wks |

## <u>MEMORANDUM IN SUPPORT OF SECRETARY OF LABOR'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM</u>

Defendants Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries Distribution LLC have asserted a counterclaim against their own workers, Plaintiffs in this case, who allege that Defendants owe them overtime back wages. Defendants' unjust enrichment counterclaim against their own workers is not legally cognizable in a Fair Labor Standards Act ("FLSA") case such as this one. In addition, such counterclaims by employers tend to dissuade workers from asserting their wage-related rights, which undermines the purposes of the FLSA and hinders the Secretary of Labor's enforcement of that statute. Accordingly, the Court should dismiss Defendants' unjust enrichment counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs are bakery distributor drivers who allege that Defendants misclassified them as independent contractors rather than employees under the FLSA. As a result of that alleged misclassification, Plaintiffs claim that Defendants owe them overtime back wages under the FLSA. In response, Defendants have brought an unjust enrichment counterclaim against Plaintiffs, seeking restitution of revenue, profits, or earnings that Plaintiffs obtained to offset any overtime back wages that the Court may ultimately award to Plaintiffs.

Defendants' counterclaim is foreclosed by precedent from the United States Court of Appeals for the Second Circuit, which holds that claims for indemnification and contribution by employers are not cognizable in the context of the FLSA. Moreover, Defendants' unjust enrichment counterclaim contravenes the text, worker protection purposes, and remedial structure of the FLSA. Finally, the FLSA does not allow for the type of offsets against back wages owed that Defendants seek in their counterclaim. Therefore, the Secretary of Labor respectfully moves the Court to dismiss Defendants' counterclaim as barred by the FLSA.

## BACKGROUND

Plaintiffs allegedly have worked in sales and distribution for Defendants and their predecessors for more than 18 years. *See* Counterclaim (ECF No. 18) ¶¶ 13, 21, 29. Plaintiffs' work for Defendants involves purchasing products from Defendants and re-selling those products to customers within a specific geographic territory. *See id.* Defendants further claim that, in the course of their work, Plaintiffs earned money including by: (1) buying products from Defendants and selling those products at a higher price to customers; (2) entering into advertising agreements with Defendants; and (3) selling all or portions of their distribution rights. *See id.* ¶¶ 14, 22, 30–31. However, according to Defendants, Plaintiffs "were not entitled to wages or other employment-related benefits" as alleged independent contractors, *id.* ¶ 47, and Defendants

deny that any payments Defendants made to Plaintiffs constitute wages, *see* Answer (ECF No. 18) ¶ 31; Compl. (ECF No. 1) ¶ 31.

In their Complaint, Plaintiffs allege that they and all others similarly situated are Defendants' employees and not independent contractors. *See* Compl. ¶¶ 5, 17–30. Plaintiffs further allege that they regularly worked more than 40 hours per workweek, but Defendants willfully failed to pay them the required overtime premium under the FLSA. *See id.* ¶¶ 32, 53, 55. Accordingly, Plaintiffs seek the unpaid FLSA overtime compensation that Defendants allegedly owe them. *See id.* ¶¶ 53–57.

Defendants' position, on the other hand, is that Plaintiffs were properly classified as independent contractors. *See, e.g.*, Counterclaim ¶¶ 11–13, 19–21, 27–29, 47, 49. However, if the Court determines that Plaintiffs should have been classified as employees and awards Plaintiffs some or all of the back wages or damages they seek in this case, Defendants assert an unjust enrichment counterclaim against Plaintiffs. *See id.* ¶¶ 51–52. If the Court concludes that Defendants violated the FLSA, Defendants demand "restitution" from Plaintiffs of any amounts Plaintiffs earned "to offset, reduce, or nullify" Defendants' liability for unpaid overtime compensation and liquidated damages. *Id.* at p.34 & ¶ 52. Specifically, Defendants ask that the Court order Plaintiffs to pay to Defendants: (1) any revenue from Plaintiffs' sale of products to customers; (2) any amounts paid to Plaintiffs under advertising agreements; and (3) any revenue from Plaintiffs' sale of all or a portion of their distribution rights. *See id.* at p.34.

## LEGAL STANDARD

On a motion to dismiss a counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court considers the "legal sufficiency" of the counterclaim, "taking its factual allegations to be true and drawing all reasonable inferences in . . . favor" of the non-moving

party. *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 67 (2d Cir. 2023). "[T]he tenet that a court must accept as true all of the allegations contained in a [counterclaim] is inapplicable to legal conclusions," even if the "legal conclusion [is] couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Second Circuit has instructed that a district court's task at the Rule 12(b)(6) stage is "to assess the legal feasibility of the" claim. *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

## ARGUMENT

**I.     Defendants' Counterclaim Seeking Restitution from Their Workers is Foreclosed by the FLSA and Should Be Dismissed**

In the event the Court concludes that Plaintiffs are employees entitled to the overtime protections of the FLSA, Defendants' counterclaim seeks restitution from Plaintiffs to offset any overtime back wages and liquidated damages that the Court may award to Plaintiffs. The Second Circuit has held that such claims by employers are foreclosed in the context of the FLSA. In effect, through their counterclaim Defendants are asking the Court to order Defendants' employees to compensate Defendants for Defendants' *own* violations of the FLSA—that is something the FLSA does not allow.

   A.   Defendants' Counterclaim Functionally Seeks Indemnification or Contribution and Should Be Dismissed Under Second Circuit Precedent

In *Herman v. RSR Security Services, Ltd.*, an individual employer-defendant in an FLSA case asserted claims against co-employers, seeking indemnification and/or contribution from them for the back wages the employer-defendant owed to employees. 172 F.3d 132, 135–36, 143 (2d Cir. 1999). The Second Circuit held in that case that "there is no right to contribution or indemnification for employers held liable under the FLSA." *Id.* at 144. That is to say, an employer who is liable for back wages under the FLSA cannot seek to recover those wages from co-employers through indemnification or contribution. *See id.* at 143–44. While *RSR* was

4

decided in the context of an employer seeking indemnity and/or contribution from other officials

in the business, the holding of the case resonates even more strongly when an employer found

liable under the FLSA seeks indemnification or contribution from the very employees to whom

the employer is liable for back wages. *See id.* at 144 (citing favorably cases from other circuits

holding that indemnity actions by employers against employees are prohibited under the FLSA);

*Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992); *Lyle v. Food Lion,*

*Inc.*, 954 F.2d 984, 987 (4th Cir. 1992); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260,

1264 (5th Cir. 1986); *see also Fernandez v. Kinray, Inc.*, No. 13-CV-4938 (ARR) (SMG), 2014

WL 12778829, at *7 (E.D.N.Y. Feb. 5, 2014) ("Requiring plaintiffs to indemnify defendants for

the costs of litigating an unsuccessful FLSA claim would deter plaintiffs from bringing suit in

the first place.").

   In this case, Defendants cannot escape *RSR*'s holding simply by styling their unjust

enrichment counterclaim as a request for "restitution" rather than indemnification or

contribution. Courts have taken a functional approach to determining the types of employer

claims that amount to requests for indemnification or contribution and, therefore, are foreclosed

in the context of the FLSA. For example, in *Lyle*, an employer counterclaimed and filed a third-

party complaint against an employee who was seeking FLSA back wages. 954 F.2d at 987. The

employer claimed that the employee breached his contract and his fiduciary duty to the company.

*Id.* With respect to those claims, the United States Court of Appeals for the Fourth Circuit took a

functional approach and understood the contract and fiduciary duty claims as seeking

indemnification: "In effect, [the employer] sought to indemnify itself against [the employee] for

its own violation of the FLSA, which . . . is something the FLSA simply will not allow." *Id.*

Similarly, a number of district courts, including some within the Second Circuit, have eschewed formalism in assessing whether employers' claims, no matter how they are pleaded, actually seek indemnification or contribution in FLSA cases. *See Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013) (dismissing defendant-employers' counterclaim as barred by the FLSA because "[w]hatever language [d]efendants choose to employ, and whatever their supposed theory, it is clear that they seek contribution from employees for any damages that might ultimately be assessed for the failure to pay minimum wage and/or overtime compensation"); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001) (taking a functional approach to defendant-employers' contract claim against employee's former company and stating that "defendants' attempt to recover damages from [the employee's former company] for overtime violations is an attempt to receive indemnification for FLSA liability"); *cf. Cordova v. FedEx Ground Package Sys. Inc.*, 104 F. Supp. 3d 1119, 1134 (D. Or. 2015) (rejecting defendant-employer's attempt to frame claim as one for unjust enrichment in a case under Oregon state law and finding that "the allegations amount to an indemnification claim for the damages [the defendant-employer] may owe to [the workers at issue]").

As in the above cases, the Court here should take a functional approach to Defendants' unjust enrichment counterclaim seeking restitution and see that counterclaim for what it really is—namely, a request for indemnification or contribution from Defendants' employees for Defendants own violations of the FLSA. Defendants' counterclaim is, therefore, barred by the FLSA and should be dismissed.[1]

---

[1] A functional approach to Defendants' counterclaim is particularly appropriate here because indemnification, which is barred in FLSA cases such as this one, is rooted in the concepts of unjust enrichment and restitution, which are the bases of Defendants' counterclaim

B. If the Court Concludes Defendants' Counterclaim Does Not Functionally Seek
   Indemnification or Contribution, the Counterclaim Should Be Dismissed Because
   There Is No Right to Restitution for Employers Held Liable Under the FLSA

In the event that this Court does not agree that Defendants' counterclaim for restitution is

functionally a claim seeking indemnification or contribution, the Court should still dismiss the

counterclaim. The Second Circuit's reasoning in *RSR* as to why claims for indemnification and

contribution are not cognizable under the FLSA applies equally to claims for restitution.

In *RSR*, the Second Circuit relied on the methodology set forth by the Supreme Court of

the United States in *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*,

451 U.S. 77 (1981), to reach the conclusion that the FLSA does not provide employers held

liable under the statute with any right to indemnification or contribution. *See* 172 F.3d at 143–44.

As the Supreme Court counseled in *Northwest Airlines*, "[i]n determining whether a federal

statute that does not expressly provide for a particular private right of action nonetheless

implicitly created that right, [a court's] task is one of statutory construction." 451 U.S. at 91.

This inquiry requires the court to use "traditional tools of statutory interpretation," including an

examination of "the language of the statute," "its purpose and structure," and "its legislative

history." *RSR*, 172 F.3d at 143.

Applying the Second Circuit's reasoning in *RSR*, the unavoidable conclusion is that

claims for restitution by employers, like Defendants' counterclaim here, are barred by the FLSA

---

in this case. *See, e.g.*, Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. g (2011)
("Where they have not been specified by contract, the characteristic remedies of the law of
suretyship (exoneration, indemnification, subrogation, and contribution) all enforce a liability
founded on unjust enrichment . . . ."); 42 C.J.S. Indemnity § 2 ("Indemnification is a flexible,
equitable remedy designed to accomplish a fair allocation of loss among parties, based on the
legal concepts of restitution and unjust enrichment, with the prevention of unjust enrichment as
its underpinning." (footnotes omitted)); Restatement (First) of Restitution § 86 cmt. c (1937)
(describing right to indemnity for tort damages as "restitutionary in nature").

just like claims seeking indemnification and contribution. First, this Court must look to the text of the FLSA, *see id.* at 144, which makes no provision for restitution sought by employers, *see* 29 U.S.C. §§ 216–17. Rather, the only FLSA remedies that are based in principles of restitution are intended for the benefit of employees. *See id.* § 216(b)–(c) (providing for the recovery of unpaid minimum wages and unpaid overtime compensation on behalf of employees); *id.* § 217 (allowing the Secretary to seek a restitutionary injunction restraining "any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees"); *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 58 (2d Cir. 1984) ("The purposes of a restitutionary injunction under section 17 are to make whole employees who have unlawfully been deprived of wages and to eliminate the competitive advantage enjoyed by employers who have illegally underpaid their workers.").

Second, although the fact that the FLSA does not expressly create a right to restitution for liable employers is "significant," *Nw. Airlines, Inc.*, 451 U.S. at 91, "such a right may still exist if the statute was 'enacted for the special benefit of a class of which petitioner is a member,'" *RSR*, 172 F.3d at 143 (quoting *Nw. Airlines, Inc.*, 451 U.S. at 92). This consideration cannot save Defendants' counterclaim for restitution, however, as the Second Circuit has already conclusively determined that "the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted." *RSR*, 172 F.3d at 144.

Third, the Court looks to the structure of the FLSA to determine whether claims for restitution by liable employers were contemplated by the statute. *See id.* at 143–44. The Second Circuit has recognized that "the FLSA has a comprehensive remedial scheme." *Id.* at 144. This scheme is exhibited by the FLSA's "express provision for private enforcement in certain

carefully defined circumstances," *id.* at 144 (quoting *Nw. Airlines, Inc.*, 451 U.S. at 93), as well as the provision for enforcement by the Secretary in other specific circumstances, *see* 29 U.S.C. §§ 211(a), 216(c), 217; *Nw. Airlines, Inc.*, 451 U.S. at 93. The Second Circuit therefore determined that the FLSA's "comprehensive" structure "strongly counsels against judicially engrafting additional remedies." *RSR*, 172 F.3d at 144; *see also Nw. Airlines, Inc.*, 451 U.S. at 93–94 (recognizing that a statute's comprehensive remedial scheme "expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies"); *Scalia v. Employer Solutions Staffing Grp. LLC*, 951 F.3d 1097, 1104 (9th Cir. 2020) (declining to read right to indemnity for employer into FLSA as it was not within court's competence to "add[] private remedies that Congress never intended to allow"); *Gingerbread House, Inc.*, 977 F.2d at 1408 (holding that indemnity actions by employer "are not part of the comprehensive statutory scheme set forth by Congress" in the FLSA); *Lyle*, 954 F.2d at 987 (declining to engraft indemnity action on "otherwise comprehensive" FLSA); *LeCompte*, 780 F.2d at 1264 (same). Thus, this third factor also shows that claims for restitution by employers are not contemplated by the FLSA's structure and therefore should not be read into the statute by federal courts.

Finally, the Court must consider the legislative history of the FLSA. *See RSR*, 172 F.2d at 144. Where the concept of restitution is mentioned in the FLSA's legislative history, it is discussed in the context of support for employee-protective wage and hour legislation and employers making restitution to their employees for deficiencies in compensation. *See, e.g.*, *Joint Hearings on H.R. 7200 & S. 2475 Before S. Comm. on Educ. & Labor & H. Comm. on Labor*, 75th Cong. 371–72, 376 (1937) (statement of Jay C. Hormel, President, George A. Hormel & Co.). The Secretary has not found in the FLSA's legislative history any mention of employers

seeking restitution from their employees who claim they are owed minimum wages or overtime compensation.

All four of the above factors support the conclusion that restitution is not available to employers under the FLSA. *See Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974) ("The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards."), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). In light of the FLSA's comprehensive structure, it also is not appropriate here for federal courts to take the rare step of making federal common law. *See Nw. Airlines, Inc.*, 451 U.S. at 96–97; *Employer Solutions Staffing Grp. LLC*, 951 F.3d at 1105. In addition, any argument that Defendants' counterclaim may still proceed based on state law must fail in an FLSA case, as the Second Circuit has instructed that "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law" in the context of a claim brought by an employer liable under the FLSA. *RSR*, 172 F.3d at 144. This Court should, therefore, dismiss Defendants' counterclaim as foreclosed by the FLSA.[2]

---

[2] There are two unpublished district court decisions in which courts have allowed unjust enrichment counterclaims by defendants in FLSA cases to proceed. *See Mode v. S-L Distrib. Co.*, No. 3:18-CV-00150-KDB-DSC, 2021 WL 3921344, at *20–22 (W.D.N.C. Aug. 31, 2021); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 7:17-cv-03556(NSR)(JCM), 2019 WL 1244293, at *3 (S.D.N.Y. Mar. 3, 2019). Neither of those decisions has persuasive value with respect to the Secretary's arguments for dismissing Defendants' unjust enrichment counterclaim in this case. In *Franze*, the court stated that dismissing the defendants' unjust enrichment counterclaim at the Rule 12(b)(6) stage would be "premature" because the court had not yet determined whether the plaintiffs were employees or whether defendants had violated the FLSA. 2019 WL 1244293, at *3. That reasoning is not persuasive. In this case, if the Court determines that Plaintiffs are independent contractors, then Defendants assert no counterclaim against Plaintiffs. *See* Counterclaim ¶ 52. Alternatively, if the Court concludes that Plaintiffs *are* employees who are owed FLSA overtime back wages, then Defendants' counterclaim fails as a matter of law for the reasons the Secretary has set out above. Because there is no circumstance in which Defendants' counterclaim would be cognizable, it is not premature to dismiss the counterclaim at this juncture. In *Mode*, which was decided at the summary judgment stage, the court allowed an unjust enrichment counterclaim to proceed but its reasoning did not address the

C.  To Allow Defendants' Counterclaim to Proceed Would Frustrate the FLSA's Purposes, Reduce Compliance, and Hinder Enforcement

If the Court decides that Defendants can proceed with their counterclaim against their own workers, the purposes of the FLSA would be frustrated, compliance reduced, and enforcement significantly impeded.

First, as noted above, the FLSA was enacted for the benefit of employees, *see RSR*, 172 F.3d at 144, and with the purpose of ensuring a "minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13 (2011) (counseling that the FLSA should be interpreted in a way to give "broad rather than narrow protection to the employee" (quoting *NLRB v. Scrivener*, 405 U.S. 117, 122 (1972))). Allowing employers to recover money from their employees in cases where employees seek their unpaid minimum wages or overtime compensation would frustrate those purposes. *See Heard*, 491 F.2d at 4 ("Arguments and disputations over claims against [employees'] wages are foreign to the genesis, history, interpretation, and philosophy of the Act."); *Slaughter v. Alpha Drugs, LLC*, 907 F. Supp. 2d 50, 54 (D.D.C. 2012) ("[T]he Court is cognizant of the fact adjudicating counterclaims filed by an employer in the same context as a suit seeking unpaid wages may be inconsistent with the purpose of the FLSA."). And neither the FLSA nor the common law countenance employers recouping monies that were only paid to employees *because of* the employer's violations. *See Lyle*, 954 F.2d at 987 (noting that "the FLSA simply will not allow" an employer to indemnify itself for its own violations of the statute); *see also Precision Instrument Mfg. Co. v. Auto. Maint.*

arguments or law set out above regarding why such a counterclaim is not allowed under the FLSA. *See* 2021 WL 3921344, at *20–22. Accordingly, that decision also does not have persuasive value with respect to the Secretary's arguments for dismissing Defendants' counterclaims here.

*Mach. Co.*, 324 U.S. 806, 814 (1945) ("[T]he equitable maxim that 'he who comes into equity must come with clean hands' . . . is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.").

In addition, employers would be discouraged from complying with the FLSA if counterclaims like the one Defendants assert here are allowed to proceed. *See Gingerbread House, Inc.*, 977 F.2d at 1408 ("Compliance with the FLSA will not be furthered if employees must defend against indemnity actions."). More specifically, "an employer who believed that any violation of the overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute." *LeCompte*, 780 F.2d at 1264. In enacting the FLSA, Congress thoughtfully designed the statutory scheme "to foster a climate in which compliance with the substantive provisions of the Act would be enhanced." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Thus, any development that would have the effect of reducing employers' compliance with the FLSA should be avoided.

Finally, the enforcement scheme of the FLSA would be undermined if employers are allowed to prosecute counterclaims for restitution against employees who assert their rights to back wages. The Secretary is authorized to investigate potential violations of the FLSA, including those related to payment of the minimum wage and the overtime premium, *see* 29 U.S.C. § 211(a), and to enforce the FLSA in court, *see id.* §§ 216(c), 217. To effectively investigate possible violations of the FLSA and pursue enforcement litigation, the Secretary depends on workers feeling able to speak freely with his representatives. *See Robert DeMario Jewelry, Inc.*, 361 U.S. at 292 ("Plainly, effective enforcement [of the FLSA] could . . . only be expected if employees felt free to approach officials with their grievances."); *Greathouse v. JHS*

*Sec. Inc.*, 784 F.3d 105, 113 (2d Cir. 2015) ("Because the government cannot directly monitor every employer's payroll, [the] FLSA also creates an enforcement mechanism that relies in significant part on employees' complaints."). As courts have recognized, employers' counterclaims against employees may well chill workers from coming forward to inform the Secretary of potential violations of the FLSA. *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (describing groundless counterclaims as having an *in terrorem* effect); *see also Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 740 (1983) ("[B]y suing an employee who files charges with the [National Labor Relations] Board or engages in other protected activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit."); *Mode*, 2021 WL 3921344, at *17 (noting that allowing indemnification claim to proceed "would inevitably chill the right of a putative FLSA plaintiff in these circumstances to pursue a FLSA claim"). Employer counterclaims against employees therefore serve to undermine the Secretary's ability to effectively enforce the FLSA.

In addition to the Secretary's right to seek back wages and liquidated damages for employees, *see* 29 U.S.C. § 216(c), the Secretary possesses the *sole* authority to pursue prospective injunctive relief restraining future violations of the FLSA, *see id.* §§ 211(a), 217; *Roberg v. Henry Phipps Estate*, 156 F.2d 958, 963 (2d Cir. 1946); *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014). A prospective injunction against violators of the FLSA ensures that those violators will comply with the statute going forward and that the Secretary may use the public's limited resources most efficiently to investigate other potential violations. *See Martin v. Funtime, Inc.*, 963 F.2d 110, 113–14 (6th Cir. 1992) (explaining that the purpose of a prospective injunction is "to effectuate

general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations," and also noting that these injunctions are "essential" to "lessen[] the responsibility of the Wage and Hour Division in investigating instances of noncompliance"); *see also Robert DeMario Jewelry, Inc.*, 361 U.S. at 292 (describing the central role of Section 17 of the FLSA in ensuring compliance with substantive provisions of the statute). However, if employees are chilled from participating in the Secretary's FLSA investigations or serving as witnesses in litigation, the Secretary will be hindered in his exclusive ability to seek injunctions against those who violate the FLSA. *See Robert DeMario Jewelry, Inc.*, 361 U.S. at 292; *Greathouse*, 784 F.3d at 113. Compliance with and enforcement of the FLSA would therefore be weakened overall by allowing employers to assert claims against their workers, as Defendants do in this case.

*** 

Therefore, the Court should dismiss Defendants' unjust enrichment counterclaim seeking restitution, as it is barred by the FLSA.

## II.    Defendants' Counterclaim Also Is Foreclosed by the FLSA and Must Be Dismissed Because Defendants Seek an Offset Against Their FLSA Liability

Defendants characterize their counterclaim as seeking the return of any monies earned by Plaintiffs "to offset, reduce, or nullify any award of wages and/or damages, liquidated damages, and any other liabilities that [Plaintiffs] may be entitled to as purported employees." Counterclaim ¶ 52; *see also id.* at p.34 (requesting restitution "to offset, reduce, or nullify any damages that [Plaintiffs] may be awarded if the Court deems them to be employees, as well as any additional award of damages to the extent that such damages exceed any offset"). Defendants' claim for offset fails as a matter of law because offsets against back wages that employers owe to employees are only allowed where the employer has pre-paid wages to

employees. Defendants here admit in their pleadings that they did not pay wages to Plaintiffs and, therefore, this is not a case in which Defendants can seek offsets against any back wages they may owe their workers.

Nearly 50 years ago, the United States Court of Appeals for the Fifth Circuit held that "[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor." *Heard*, F.2d at 4. Reiterating that "*Heard*'s longstanding prohibition of set-offs in FLSA cases is the rule in [the] circuit," the Fifth Circuit more recently held and explained that requests for offsets against back wages owed in FLSA cases may not be raised by employers "unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 742 (5th Cir. 2010). At least one district court in the Second Circuit has agreed with that approach. *See Guan v. Long Island Bus. Inst., Inc.*, No. 15-CV-2215 (CBA) (VMS), 2017 WL 11703860, at *6 (E.D.N.Y. Sept. 30, 2017).

In this case, Defendants' allegations show that this is *not* one of the limited FLSA cases where offsets are available. On the face of their own Answer and Counterclaim, Defendants allege that Plaintiffs "were not entitled to wages," Counterclaim ¶ 47, and assert that amounts Defendants paid to Plaintiffs did not constitute wages, *see id.* ¶ 51; Answer ¶ 31. Defendants' disavowal of any payments that could be considered wages or any intent to pre-pay wages or overtime compensation to Plaintiffs is fatal to Defendants' counterclaim seeking offset. *See Martin*, 628 F.3d at 743 (holding that employer was not allowed to set-off damages due under FLSA because "the money and benefits [the employer] paid to [the employee] were not wage

15

payments, advance or otherwise"); *Guan*, 2017 WL 11703860, at *6 (denying offset where defendants' over-payments for meal times were not "a conscious effort to pre-pay Plaintiffs for overtime").

Moreover, some of the "benefits" for which Defendants seek an offset of their potential FLSA liability were not even monies that *Defendants* actually paid to Plaintiffs. *See* Counterclaim ¶ 52 (listing as potential offsets revenue Plaintiffs generated through sales of products and revenue Plaintiffs received as a result of selling their distribution rights); *id.* ¶¶ 14, 22, 30 (alleging that Plaintiffs purchase products from Defendants and re-sell them to customers); *id.* ¶¶ 41–42 (alleging that certain Plaintiffs sold distribution rights to other distributors). The law makes clear that any potential offset must be based on payments made by the employer to the employees. *See Martin*, 628 F.3d at 742–43; *Guan*, 2017 WL 11703860, at *6. Taking Defendants' allegations as true, as the Court must do at this stage, Defendants' counterclaim for offset fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Defendants' counterclaim under Rule 12(b)(6) as that counterclaim is foreclosed by the FLSA.

Respectfully submitted,

Post Office Address:               Seema Nanda
                                            Solicitor of Labor

U.S. Department of Labor
Office of the Solicitor                Maia S. Fisher
John F. Kennedy Federal Building     Regional Solicitor
Room E-375
Boston, MA 02203                 /s/ Mark A. Pedulla
TEL: (617) 565-2500             Mark A. Pedulla
FAX: (617) 565-2142             Wage and Hour Counsel
                                            pedulla.mark.a@dol.gov
                                            BBO No. 685925

Date: March 8, 2023             /s/ Emily V. Wilkinson
                                          Emily V. Wilkinson
                                          Trial Attorney
                                          wilkinson.emily.v@dol.gov
                                          MA BBO No. 699512

                                          U.S. Department of Labor
                                          Attorneys for Proposed Intervenor

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document, filed through the CM/ECF system on March 8, 2023, shall be sent electronically to all registered participants as identified on the Notice of Electronic Filing.


                            <u>/s/ Emily V. Wilkinson</u>
                            Emily V. Wilkinson