UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| ARTHUR PROVENCHER, MICHAEL McGUIRE, and RONALD MARTEL, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.; BIMBO FOODS BAKERIES DISTRIBUTION LLC,<br><br>Defendants. | Civil Action No. 2:22-cv-00198<br><br>Judge William K. Sessions |

**MEMORANDUM IN SUPORT OF
PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**

**INTRODUCTION**

Under distribution agreements with Defendants Bimbo Bakeries USA and Bimbo Foods Bakeries Distribution, Plaintiffs deliver Defendant's baked goods to retailers. Believing that their classification as independent contractors was unlawful, and that they should be compensated as employees, Plaintiffs brought action against Bimbo for violating the Fair Labor Standards Act and Vermont Employment Practices Laws.

Bimbo has now answered with counterclaims for unjust enrichment. Its rationale is that, if Plaintiffs' independent-contractor status was unlawful—if it turns out that Bimbo was violating the FLSA and Vermont law by denying Plaintiffs lawful wages—then anything Plaintiffs received from Bimbo beforehand amounts to ill-gotten gains. Because of serious flaws in that reasoning, Plaintiffs now move to dismiss the counterclaims, and there are three good reasons why.

The first reason is that unjust enrichment sounds in equity, which demands the aggrieved party to have clean hands. When an aggrieved party is trying to avoid its legal responsibilities and

circumvent government regulation, its unclean hands forbid a claim for unjust enrichment. Yet in this case, Bimbo brings an unjust enrichment claim that is *contingent* on this Court declaring that Bimbo violated the law. This is a fundamental abuse of equity, and this Court has broad discretion to deny such relief by dismissing the claim.

The second reason is that Bimbo cannot seek relief in equity when it has recourse to relief at law. Bimbo implies that if Plaintiffs are classified as employees, this will invalidate its contracts with the Plaintiffs. That conclusion of law, which does not bind this Court on a motion to dismiss, is simply wrong. Under explicit terms in the parties' Distribution Agreements, if any part of those agreements is found invalid, the invalid terms are severed and the balance remains valid and fully enforceable. If Bimbo has grievances under those agreements, it can bring a claim for breach of contract. With that adequate remedy at law, Bimbo cannot resort to equity.

The third reason is that the counterclaim illegally interferes with employees' enforcement rights under the FLSA. The Second Circuit has forbidden employers from pursuing remedies, like indemnity or contribution, that shift liability and frustrate employees' statutory right to privately enforce their FLSA rights. *Herman v. RSR Security Services Ltd.*, 172 F.3d 132 (2d Cir. 1999). By asserting a counterclaim against Plaintiffs that is contingent upon its own wrongdoing under the FLSA, Bimbo violates that principle, sending the message that misclassified workers will get sued for challenging the misclassification. If the Congressional intent behind private enforcement of the FLSA is to be honored, then Bimbo's counterclaim is illegal.

Under both principles of equity and with due regard for employees' rights under the FLSA, Bimbo's counterclaim cannot stand. Plaintiffs respectfully respect that their motion to dismiss be granted and that Bimbo's counterclaim be dismissed. Plaintiffs further request that this motion be scheduled for oral argument under Local Rule 7(a)(6).

## BACKGROUND

Plaintiffs Arthur Provencher, Michael McGuire, and Ronald Martel distribute bakery goods to retailers for Defendants Bimbo Bakeries USA and Bimbo Foods Bakeries Distribution. They brought this lawsuit against Defendants for violations of the Fair Labor Standards Act and Vermont Employment Practices Laws. Plaintiffs allege that Defendants unlawfully misclassified them as independent contractors, and if they had been properly classified as employees, they would be entitled to overtime pay, repayment of unlawful deductions from wages, and other relief. (*See* Doc. No. 1 at 1-2, 11-14.)

Defendants answered Plaintiffs' complaint on January 23, 2023 and with that answer, Defendant Bimbo Foods Bakeries Distribution (hereinafter Bimbo) asserted a counterclaim against all three Plaintiffs for unjust enrichment. The counterclaims allege that the relationship between each Plaintiff and Bimbo is governed by a Distribution Agreement (Doc. No. 18 at 25-29), with the operative versions of each Plaintiff's respective Distribution Agreement attached as Exhibits B, C, and D (Doc. Nos. 18-2, 18-3, 18-4).

The Distribution Agreements say that Plaintiffs have independent-contractor relationships with Bimbo. (*See* Doc. No. 18 at 25, 27, 28.) Bimbo alleges that "by nature of their status as independent contractors," Plaintiffs obtained "opportunities for profit" from Bimbo, including revenues through advertising agreements and transactions involving their distribution rights. (*See id.* at 29.) Bimbo further alleges,

> Despite the substantial revenue they retained … as a result of their independent-contractor status, which they retained (and continue to retain) at the expense of [Bimbo] and its predecessors, [Plaintiffs] now seek additional payments in the form of overtime compensation and reimbursement for allegedly unauthorized so-called "wage" "deductions" based on the allegation that they are employees …. [Plaintiffs] also seek damages in the form of statutory penalties and

>> liquidated damages for alleged violations of the FLSA and Vermont law ….

(Doc. No. 18 at 31-32.) The implication is that Plaintiffs cannot be allowed to earn revenue under the Distributor Agreements and then challenge their misclassification as independent contractors: if they recovered overtime or other relief under the FLSA and Vermont wage laws, this would result in "additional payments."

With that premise, Bimbo asserts that "[i]n the event the Court finds [Plaintiffs] should have been classified as employees of [Bimbo]," Plaintiffs are unjustly enriched and Bimbo should recover those benefits in equity. (Doc. No. 18 at 32.) This unjust enrichment claim categorically depends on this Court declaring that Plaintiffs are Bimbo's employees, meaning their independent-contractor status violates either the FLSA or Vermont law. More simply put, if it was illegal for Bimbo to misclassify Plaintiffs as independent contractors, Bimbo believes its illegality gives it recourse against Plaintiffs in equity. (*See id.* at 32-33.)

This motion to dismiss followed.

## **DISCUSSION**

On a motion to dismiss for failure to state a claim, a district court is guided by two working principles. One is that, while the court must accept the truth of all factual allegations, it is not bound by legal conclusions. *See, e.g., Corren v. Sorrell*, 167 F. Supp. 3d 647 (D. Vt. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). More specifically, this Court must reject conclusory allegations about whether Plaintiffs are employees or independent contractors; that is "not a factual allegation but an ultimate legal determination." *Poku v. Beavex, Inc.*, No. 13-3327, 2013 WL 5937414 at *2 (D.N.J. Nov. 1, 2013); *accord, Fernandez v. Kinray, Inc.*, No. 13-4938, 2014 WL 12778829 at *6 (E.D.N.Y. Feb. 5, 2014).

4

The other working principle is that, to survive a motion to dismiss, the pleadings must state a plausible claim for relief. When assessing plausibility, the court must be mindful of content and draw on its judicial experience and common sense. *See, e.g., Golesorkhi v. Green Mountain Coffee Roasters, Inc.*, 973 F. Supp. 2d 541, 552 (D. Vt. 2013). If the factual allegations do not reasonably support an inference of liability, the pleadings are not facially plausible and a motion to dismiss must be granted. *See, e.g., Citibank N.A. v. City of Burlington*, 971 F. Supp. 2d 414, 423 (D. Vt. 2013).

A. **Because Bimbo's unjust enrichment claim is contingent on a finding that it violated state or federal wage laws, Bimbo has unclean hands and cannot seek relief in equity.**

To assert unjust enrichment under Vermont law, the aggrieved party must allege that (1) it conferred a benefit to the other party; (2) the other party accepted that benefit; and (3) it would be inequitable to the recipient to retain that benefit. *See, e.g., Pettersen v. Monaghan Safar Ducham PLLC*, 256 A.3d 604, 610 (Vt. 2021); *Akerley v. North Country Stone, Inc.*, 620 F. Supp. 2d 591, 602 (D. Vt. 2009). If the aggrieved party is not "justified in expecting" the alleged benefit, then it cannot be recovered through a claim for unjust enrichment. *See McLaren v. Gabel*, 229 A.3d 422, 432 (Vt. 2020).

To bring unjust enrichment or other claims in equity, Vermont requires the aggrieved party to "come to the court with clean hands." *See, e.g., Shattuck v. Peck*, 70 A.3d 922, 926 (Vt. 2013) (quoting *Savage v. Walker*, 969 A.2d 121, 125 (Vt. 2013).) What that means is the aggrieved party cannot use equitable claims to "avoid a governmental penalty" or engage in transactions "intended to circumvent governmental regulations[.]" *Shattuck*, 70 A.3d at 926, 927; *cf. Savage*, 969 A.2d at 125 (stating in dictum that one "who transfers property to avoid his creditors … would not appear" to have clean hands).

This Court has "broad discretion" to refuse equitable relief to the unclean litigant. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan*, 265 F. Supp. 2d 440, 445 (D. Vt. 2003). And this Court has good reason to conclude that, because Bimbo has unclean hands, it cannot pursue unjust enrichment or other equitable relief.

The core premise for its unjust enrichment claim is that, *if* it illegally misclassified its workers as independent contractors, *then* it should be able to sue them for unjust enrichment. In effect, Bimbo uses equity to shield itself from the negative consequences of its FLSA and Vermont wage law violations. Because Bimbo's unjust enrichment claim is a vehicle to avoid penalties or circumvent regulations, its hands are unclean. *Cf. Shattuck*, 70 A.3d at 926-27. To prevent such misuse of equity, this Court has discretion to deny equitable relief and dismiss the claim for unjust enrichment.[1]

This outcome finds further support from the Vermont Supreme Court decision in *Gallipo v. City of Rutland*. 882 A.2d 1177 (Vt. 2005). In that matter, the plaintiff made a claim for workers compensation benefits, which resulted in the defendant—plaintiff's former employer—paying for interim workers compensation benefits. When that claim was later denied, defendant asserted a counterclaim for unjust enrichment, seeking to recover the interim benefits. *Id.* at 1180, 1191. The *Gallipo* court rejected this counterclaim, finding unjust enrichment inconsistent with Vermont's

---

[1] This Court also has grounds to find unclean hands based on the claim's overreach. Under its advertising agreements with the Plaintiffs, Bimbo alleges unjust enrichment going back to 2004. (*See* Doc. No. 18 at 29-30.) Bimbo also complains about unjust enrichment through transactions that occurred in 1999, 2001, 2002, 2006, and 2013. (*See id.* at 31.) But statute of limitations for unjust enrichment is six years, which puts the time horizon for this claim in 2017. *See* Vt. Stat. Ann. tit. 12 § 511; *McLaren v. Gabel*, 229 A.3d 422, 436 n. 10 (Vt. 2020). If this litigation establishes that Bimbo unlawfully misclassified its workers as independent contractors, this cannot justify Bimbo asserting claims in equity that reach long past the statute of limitations.

workers compensation laws and it would upset "the delicate balance that the Legislature designed in the workers' compensation arena." *Id.* at 1195.

A similar balance exists for workers' rights under the FLSA. As discussed further below, Congress supplied a specific, private enforcement mechanism for workers to vindicate their FLSA rights. By asserting an unjust enrichment claim that is *contingent on its own FLSA liability*, Bimbo interferes with that statutory framework. Vermont courts should accord as much respect for the FLSA as they do for the state's workers compensation laws: an employer should not have relief in equity where that relief undermines employees' statutory rights. That reinforces how Bimbo has unclean hands and accordingly requires dismissal of its unjust enrichment claims.

**B.      Should this Court determine that Plaintiffs are employees, this does not invalidate Plaintiffs' Distributor Agreements; the parties' relationship is still governed by contract and because Bimbo has remedies at law, it cannot seek recourse in equity.**

The unjust enrichment claim must also be dismissed because Bimbo already has recourse to relief at law. The underlying principle under Vermont law is that equity is available only when there is not an adequate remedy at law. *See, e.g., Ehlers v. Ben & Jerry's Homemade Inc.*, No. 19-194, 2020 WL 2218858 at *9 (D. Vt. May 7, 2020) (quoting *Wynkoop v. Stratthaus*, 136 A.3d 1180, 1996 (Vt. 2016) (Eaton, J. concurring)). Thus where unjust enrichment simply "duplicates, or replaces" a conventional contract claim, the claim is not available. *See id.* (quoting *Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, No. 16-28, 2019 WL 5081061 at *2 (D. Vt. Oct. 10, 2019).)

Bimbo's unjust enrichment claim rests on a *legal conclusion*: if it illegally misclassified its employees as independent contractors, then all contracts with those workers are invalid and equity must fill the gap. But misclassification of an independent contractor *does not* automatically render the contract invalid. *See Mode v. S-L Distribution Co.*, No. 18-150, 2021 WL 3921344 at *19-*20

7

(W.D.N.C. Sept. 1, 2021) ("Even if a Court determines that Plaintiffs are employees rather than independent contractors that finding alone does not disturb either the existence or the validity of the Distributor Agreement."). To the contrary, the parties' relationship is still governed by the contract—by the surviving *valid and legal* terms in that contract. *See id.*

On this motion to dismiss, this Court need not accept Bimbo's legal conclusions about whether the Distribution Agreements will be invalidated by the FLSA. … This question of law is one that this Court decides for itself. Under straightforward principles of contract interpretation, the Distribution Agreements are not invalidated by reclassification and would continue to govern the parties' relationships.

Plaintiffs' Distribution Agreements are governed by New York and Pennsylvania law. (*See* Doc. No. 18-2 at *20; Doc. No. 18-3 at *18; Doc. No. 18-4 at *18.) In both jurisdictions, the severability of illegal contract terms chiefly depends on the parties' intentions as expressed in the contract. *See, e.g., In re Wilson's Estate*, 405 N.E.2d 220, 223 (N.Y. 1980); *Jacobs v. CNG Transmission Corp.*, 772 A.2d 445, 450 (Pa. 2001). If a contract expressly states that on a decision that terms are invalid, the remainder continues in force, the contract remains in effect "with little room for construction." *Christian v. Christian*, 365 N.E.2d 849, 856 (N.Y. 1977).

The Distribution Agreements all contain the following paragraph:

> Necessary Modification: In the event any provision of this Agreement is found to be invalid, contrary to, or in conflict with any applicable present or future law or regulation in a final ruling by any court, agency or tribunal possessing competent jurisdiction, this Agreement shall be deemed modified to the extent necessary to conform with any such ruling, law, or regulation. The remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

(Doc. No. 18-2 at *20; Doc. No. 18-3 at *18; Doc. No. 18-4 at *18.) The meaning is plain: if *any* terms in the Distribution Agreement are invalid, they "shall be deemed modified" to the extent

needed to make them lawful, and the remainder of the Distribution Agreement remains in effect. As the Distribution Agreements remain "in full force and effect" as a matter of law, this Court must disregard Bimbo's conclusory pleadings to the contrary. *Cf. Mode*, 2021 WL 3921344 at *19-*20 (determining that misclassification did not "disturb the existence or the validity of the Distributor Agreement").[2]

The parties' relationships are governed by contract. To the extent Bimbo complains about unfair disposition of benefits under the Distribution Agreement or related contracts, it has recourse at law under the contract. *See Mode*, 2021 WL 3921344 at *20 ("[A]ll of the parties' rights and obligations flow from their express contractual relationship, which precludes any claim of unjust enrichment …."). Because Bimbo has a plain, adequate, and complete remedy as a matter of law through breach of contract, it has no resort to unjust enrichment or any other relief in equity. *Cf. Ehlers*, 2020 WL 2218858 at *9. This is further reason to dismiss Bimbo's counterclaim for unjust enrichment.

**C.     Because Bimbo's unjust enrichment counterclaim threatens workers for exercising their FLSA private enforcement rights and improperly shifts liability to Plaintiffs, the counterclaim is illegal under the FLSA.**

The remaining ground for dismissing the counterclaim is that it is illegal under the FLSA. This argument flows from a central feature of the FLSA, its private enforcement rights, through which Congress gave workers direct statutory authority to vindicate their rights in court. *See, e.g., Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182, 1194 (E.D. Cal. 2017); *Fernandez*

---

[2]     To assert that the Distribution Agreements are entirely invalid, Bimbo must concede its illegal misclassification scheme was "the main objective of the agreement." *See Scott v. Tough Mudder Inc.*, 97 N.Y.S.3d 825, 857 (N.Y. Sup. Ct. 2019) (quoting *Mark Hotel LLC v. Madison Seventy-Seventh LLC*, 872 N.Y.S.2d 111, 114 (N.Y. App. Div. 2009)). While that could lead to the conclusion that Bimbo has no adequate remedy at law, an illegal objective otherwise reinforces that Bimbo comes to equity with unclean hands.

9

*v. Kinray, Inc.*, No. 13-4938, 2014 WL 12778829 at *7 (E.D.N.Y. Feb. 5, 2014). The argument here is that, because Bimbo's counterclaim interferes with that remedial framework, it violates the FLSA and must be dismissed as a matter of law.

The Second Circuit first addressed such interference in *Herman v. RSR Security Services Ltd.* 172 F.3d 132 (2d Cir. 1999). There the employer, which misclassified security guards as independent contractors, sought to recoup its FLSA liability through indemnity and contribution. *Id.* at 143. But the *Herman* court rejected that. Besides finding no statutory basis for such remedies, the court found indemnity and contribution inconsistent with the FLSA's "comprehensive remedial scheme as shown by the 'express provision for private enforcement in certain carefully designed circumstances.'" *See id.* at 144 (quoting *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 93 (1981)).

In accordance with *Herman*, Second Circuit district courts have extended the rule beyond contribution and indemnification claims, forbidding contractual terms that "attempt to receive indemnification for FLSA liability." *See Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001); *see also Fernandez*, 2014 WL 12778829 at *6 (rejecting terms that let employers "shift their [FLSA] losses to their employees"). Because such claims contravene the FLSA's remedial purposes, the claims are invalid and fail as a matter of law. *See, e.g., Fernandez*, 2014 WL 12778825 at *6; *cf. Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182, 1193 (E.D. Cal. 2017) (forbidding contractual indemnity claims that shift attorney fees to employees).

*Herman* was a misclassification case, so there should be no reasonable dispute that its core principles apply to workers misclassified as independent contractors. Whether indemnity is sought under statute or through contract, if putative employers were allowed to demand this remedy from workers who enforce their FLSA rights, it "create[s] the type of deterrence to private enforcement

the [FLSA] was designed to avoid." *Cummings*, 271 F. Supp. 3d at 1193; *see also Gustafson*, 171 F. Supp. 2d at 328 (parenthetically quoting *Herman* for the proposition that indemnification should be rejected "regardless of the status of the party from whom [the employer] seeks contribution").

Consistent with those authorities, where a defendant uses an indemnity clause to recapture the losses arising out of its own violations of the FLSA, the clause is invalid and contrary to public policy. *Casias v. Dist. Mgmt. Corp.*, No. 11-874, 2012 WL 4511376 at *5 (D.N.M. Sept. 28, 2012). The rationale is that defendants' own illegal conduct, not plaintiffs' conduct, is what prompted the counterclaim. *See Fernandez*, 2014 WL 12778829 at *4.

In cases where it is undisputed that FMLA plaintiffs are employees, courts have uniformly dismissed counterclaims that violated the FMLA at the pleading stage. *See, e.g., Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013); *Okarter v. City of Mount Vernon*, No. 19-1098, 2022 WL 2704278 at *4 (S.D.N.Y. July 12, 2022). But in misclassification cases, some courts have refused to dismiss, stating that employee status must be established before the illegality of the counterclaims is determined. *See Spellman v. American Eagle Express, Inc.*, 680 F. Supp. 2d 188, 192 (D.D.C. 2010). These decisions must be rejected.

For the FLSA's private enforcement mechanism to be preserved, it must apply from the dawn of the case, "before the parties know whether or not the claim will be successful." *Fernandez*, 2014 WL 12778829 at *7. Otherwise employers have an incentive to misclassify employees and use the ongoing threat of counterclaims to discourage them from asserting their FLSA rights. Such counterclaims provide employers an illegal "end run" around the private enforcement procedure Congress built into the FLSA. *Id.*

Other courts readily dismiss counterclaims that appear crafted to frustrate FLSA rights. One court expressed concern about "incentiviz[ing] employers to misclassify employees as

11

independent contractors … based on the hope that the possibility of an attorneys' fee award would dissuade litigation on the issue." *Cummings*, 271 F. Supp. 3d at 1193 (quoting with approval *Abdul-Rasheed v. KableLink Communications, LLC*, No. 13-879, 2013 WL 6182321 at *5 (M.D. Fla. Nov. 25, 2013)). Another found "an employee who believed that any violation of [FLSA] protections could be recovered from its employees would have a diminished incentive to comply with the statute." *Dobrow v. Hi-Tech Paintless Dent Repair*, No. 20-314, 2021 WL 1212796 at *6 (N.D. Ill. Mar. 31, 2021) (quoting *Emanuel v. Rolling in the Dough, Inc.*, 2010 WL 4627661 at *3 (N.D. Ill. Nov. 2, 2010)).

While Bimbo frames its counterclaim as unjust enrichment, the FLSA considerations that compel dismissal of contribution and indemnity counterclaims must apply with equal force to unjust enrichment. As Bimbo alleges on its pleadings, *only if its conduct is illegal* and Plaintiffs are deemed employees with FLSA rights, then Bimbo intends to extract whatever "unjust" gains Plaintiffs may have received beforehand. The chilling effect is clear: workers who challenge illegal misclassification under the FLSA will get sued, those who tolerate misclassification will not. This cannot be what Congress intended.

Under comparable circumstances involving a misclassified worker asserting his FLSA rights, the Western District of Texas dismissed counterclaims for indemnity, breach of contract, and unjust enrichment. *Snead v. EOG Resources, Inc.* No. 16-1134, 2017 WL 6294875 (W.D. Tex. Feb. 14, 2017). The court observed,

> Defendant's indemnity counterclaim is directed … against the very plaintiff whose FLSA coverage is outcome-determinative.… Additionally, Defendant's counterclaims *are conditioned on a finding of FLSA liability against Defendant*.… This leaves two possible outcomes: Either (1) the evidence will show that Plaintiff was an independent contractor not covered by the FLSA, in which case there will be no FLSA recovery to activate Defendant's counterclaims; or (2) the evidence will show that Plaintiff was an

Case 2:22-cv-00198-wks   Document 31-1   Filed 03/10/23   Page 13 of 15

> employee with FLSA protections, in which case the FLSA will preempt Defendant's counterclaims.… Defendant's counterclaims are thus subject to dismissal.

*Id.* at *2 (emphasis added). The same logic applies Bimbo: if the Plaintiffs are misclassified, its unjust enrichment counterclaim against them is preempted and must be dismissed.

Similar considerations guided the District of Oregon in *Cordova v. FedEx Ground Package Systems, Inc.* 104 F. Supp. 3d 1119 (D. Or. 2015). There the defendant required its drivers to form separate corporate entities. When as plaintiffs, the drivers brought Oregon wage-law claims based on misclassification against defendant, the defendant in turn sued plaintiffs' corporate entities as third-party defendants. But otherwise, the third-party claims were like those before this Court: contractual indemnity, breach of contract, and unjust enrichment. *See id.* at 1123-25.

On a motion to dismiss, the *Cordova* court identified several technical flaws that required dismissal of the contractual claims. 104 F. Supp. 3d at 1132. In addition to those concerns, the court ruled that the contractual claims illegally sought to shift away its liability for state wage-law violations. *See id.* at 1133 (holding the defendant "seeks indemnification for its own misconduct" and dismissing those claims).

Turning to the unjust enrichment claim, the court found it was "not an unjust enrichment claim at all … [but] a claim for indemnity." On reasoning that mirrors *Snead*, the *Cordoba* court stated,

> Defendant alleges that if Plaintiffs prevail on their claims, Third-Party Defendants would "unjustly retain the extra benefits" conferred on them by Defendant under their Operating Agreements … and to avoid this injustice, Third-Party Defendants must pay Defendant "the amount of the extra benefits conferred." … [T]he "benefits" … concern items such as tax benefits and a particular contract price. But, the alleged "injustice" here *is triggered by a determination that Defendant owes Plaintiffs compensation for unlawful deductions and related penalties*.…

13

104 F. Supp. 3d at 1134. The court accordingly dismissed the unjust enrichment claim for violating Oregon public policy. *See id.* at 1135.

The reasoning from *Snead* and *Cordova* is directly on point here. Like those cases, Bimbo's unjust enrichment counterclaim is conditioned on its own violation of law. *Cf. Snead*, 2017 WL 6294875 at *2 ("conditioned by a finding of FLSA liability"); *Cordova*, 104 F. Supp. 3d at 1134 ("triggered by a determination … Defendant owes Plaintiffs compensation for unlawful deductions and related penalties"). And because the purported "injustice" is really a vehicle to avoid or deflect responsibility for wage violations, the counterclaim is illegal and unenforceable. *Cf. Snead*, 2017 WL 6294875 at *2 (holding that unjust enrichment counterclaim was preempted by FLSA under *Herman* and related precedents); *Cordova*, 104 F. Supp. 3d at 1134 (holding that unjust enrichment claim violated Oregon public policy).

Under *Herman* and its progeny, Bimbo's unjust enrichment counterclaim improperly interferes with the FLSA's private enforcement mechanism. *Cf. Gustafson*, 171 F. Supp. 2d at 328; *Fernandez*, 2014 WL 12778829 at *6. And cases like *Snead* and *Cordova* show how unjust enrichment is wielded as an improper vehicle for defendants to deflect responsibility for state and federal wage laws. If Plaintiffs are misclassified, the unjust enrichment counterclaim is illegal, but if Plaintiffs are not misclassified, the counterclaim is simply immaterial. Either way, it fails as a matter of law and must be dismissed.

Dated March 10, 2023.

**/s Scott Moriarity**
Shawn J. Wanta, *pro hac vice*
Scott Moriarity, *pro hac vice*
Nicholas P. DeMaris, *pro hac vice*
WANTA THOME PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
612-252-3570
sjwanta@wantathome.com
samoriarity@wantathome.com
npdemaris@wantathome.com

Merrill E. Bent
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
802-362-2560
merrill@greenmtlaw.com

*ATTORNEYS FOR PLAINTIFFS*