UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ARTHUR PROVENCHER, MICHAEL     :
McGUIRE and RONALD MARTEL,     :
on behalf of a class,          :
                               :
         Plaintiffs,           :
                               :
v.                             :     Case No. 2:22-cv-198
                               :
BIMBO BAKERIES USA, INC. and BIMBO :
FOODS BAKERIES DISTRIBUTION LLC,   :
                               :
         Defendants.           :

## OPINION AND ORDER

Plaintiffs Arthur Provencher, Michael McGuire, and Ronald Martel filed a motion for conditional collective action certification and judicial notice under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1); 216(b). ECF No. 63. Defendant Bimbo Bakeries opposes the motion. ECF No. 75. For the following reasons, the Court **grants** Plaintiffs' motion to conditionally certify the FLSA collective action and issue notice subject to certain modifications.

## BACKGROUND

The factual and procedural history of this case has been detailed in the Court's prior orders, and the Court assumes the parties' familiarity with those facts. In brief, Plaintiffs

Provencher, McGuire, and Martel[1] filed this lawsuit on behalf of a putative class and collective of similarly situated individuals ("Distributors") who deliver and stock baked goods in grocery stores and other retail establishments on behalf of Bimbo Bakeries USA ("Bimbo") and its corporate affiliate. ECF No. 1 at 1-2. Bimbo, a corporate wholesale bakery, develops, bakes, and distributes bakery and snack food products to retail customers. *Id.* at 4. Which party is ultimately responsible for product distribution, and the resulting pay structure, is the subject of this lawsuit. The Complaint alleges that Bimbo and its corporate affiliate misclassified Plaintiffs as independent contractors while they were, in fact, employees. *Id.* at 8.

Distributors filed a complaint on October 28, 2022. ECF No. 1. On January 23, 2023, Bimbo filed an answer denying most of Distributors' allegations and asserting a counterclaim arguing

---

[1] In a footnote of their reply brief, Plaintiffs' counsel states that it has "determined that Plaintiff Ron Martel cannot proceed with his FLSA claim. With Mr. Martel's consent, Plaintiffs will be diligently proceeding with his voluntary dismissal from the action." ECF No. 78 at 13. Plaintiffs nonetheless assert that the Court should consider Mr. Martel's deposition testimony because "his experience of the economic realities of working for Bimbo are still germane to the issues in this case." *Id.* Mr. Martel has not yet filed a motion for dismissal. Bimbo filed a brief urging the Court to disregard Martel's testimony in evaluating Plaintiffs' motion. ECF No. 80-1 at 2. Because the Court concludes that Plaintiffs have satisfied their showing for conditional certification with or without Mr. Martel's testimony, it will not rely on that testimony for resolution of the issue.

that if the Court found Distributors to be employees under
Vermont labor law, Bimbo should be entitled to restitution for
benefits bestowed upon Distributors by virtue of their nominal
status as independent contractors. ECF No. 18 at 24.  The
Department of Labor ("DOL") intervened for the limited purpose
of opposing the counterclaim and both Plaintiffs and DOL filed
motions to dismiss. ECF Nos. 27 (DOL's motion to intervene); 31
(Plaintiffs' motion to dismiss counterclaim); 44 (DOL's motion
to dismiss counterclaim). The Court found that Bimbo's
counterclaim was preempted by the FLSA and granted those
motions. ECF No. 58. It also denied Bimbo's motion for judgment
on the pleadings. *Id.*

        The parties conferred on a discovery schedule but disagreed
on various details and requested that the Court hold a Rule 16
conference to resolve those disputes. ECF No. 61. Shortly
thereafter, Plaintiffs filed a motion for conditional
certification of a collective action. ECF No. 63. Two of the
central discovery issues were (1) whether to phase discovery to
first focus on information relevant to collective action
certification and (2) whether to set discovery and dispositive
motions deadlines or wait for the Court's ruling on the
certification issue. ECF No. 61.

        The Court held a Rule 16 conference on February 12, 2024.
Bimbo's counsel informed the Court that the phased discovery

issue had been resolved because Bimbo was able to get the discovery that it needed in order to oppose the certification motion. ECF No. 74 at 4. The Court declined to set discovery and motions deadlines until after the issuance of this Order. ECF No. 74 at 16. Plaintiffs' motion for conditional certification of a collective action is now ripe.[2]

## DISCUSSION

### A. Legal Standard

Plaintiffs have filed a motion for conditional certification of a collective action. Class and collective actions are different. In a class action filed pursuant to Federal Rule of Civil Procedure 23, class members may generally opt out. *See In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996). An FLSA collective action, on the other hand, requires similarly situated plaintiffs to affirmatively opt into litigation by filing their written consent with the court. 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly

---

[2] Bimbo also filed a motion for leave to file a sur-reply brief in further opposition to Plaintiffs' motion for conditional certification. ECF No. 80. It attached a copy of its proposed brief to the motion. ECF No. 80-1. The Court reviewed the motion to file a sur-reply brief, Plaintiffs' opposition to that motion, and the brief itself. Bimbo's motion to file a sur-reply brief is granted.

situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

The Second Circuit recently explained that § 216(b) is not a "mere procedural mechanism" for claim unification but instead confers a "right [to] any employee to become a party to" an action against an employer, "so long as certain preconditions are met." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (citing 29 U.S.C. § 216(b); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that Congress gave employees the "right" to proceed collectively)); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("[U]nlike a Rule 23 class, a conditionally certified FLSA collective does not acquire an independent legal status."). The primary "precondition" to proceeding collectively is that the named plaintiffs must be "similarly situated" to the opt-in plaintiffs. 29 U.S.C. § 216(b). The Second Circuit has outlined a "two-step process for certifying FLSA collective actions based on the 'similarly situated' requirement." *Scott*, 954 F.3d at 515.

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. At step two, with the benefit of additional factual development,

5

> the district court determines whether the collective action
> may go forward by determining whether the opt-in plaintiffs
> are in fact similarly situated to the named plaintiffs.

*Id.* (quoting *Glatt*, 811 F.3d at 540).

The first step is a preliminary determination in which the court decides, "based on the plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." *Rodney v. Casella Waste Sys., Inc.*, No. 2:21-CV-00196, 2023 WL 313929, at *4 (D. Vt. Jan. 19, 2023) (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)) (cleaned up). To be "similarly situated," plaintiffs and opt-in plaintiffs must "share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516 (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)). If plaintiffs and opt-in plaintiffs share legal or factual similarities relevant to their FLSA claims, "dissimilarities in other respects should not defeat collective treatment." *Id.*[3] The Supreme Court has

---

[3] Bimbo's sur-reply brief argues that *Scott* is inapplicable because it dealt with step two of the conditional certification process. ECF No. 80-1 at 4. While this is true, *Scott* nonetheless provides guidance on relevant considerations in evaluating the "similarly situated" requirement. 954 F.3d at 521. Bimbo is correct that *Scott* does not purport to overrule *Glatt*, *Myers*, or other step one certification cases, and does

explained that the "similarly situated" provision seeks to allow the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" FLSA violation. *Scott*, 954 F.3d at 516 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).[4]

Courts in this Circuit have explained that plaintiffs can satisfy their step one burden through a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."[5] *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 345 (E.D.N.Y. 2012) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). In an FLSA exemption case, plaintiffs accomplish this by showing that other employees "are similarly situated with respect to their job requirements and with regard to their pay provisions," and "who

not support the notion that the mere fact of misclassification satisfies the "similarly situated" requirement.

[4] The Court notes that while this process is often referred to as "certification," it is not certification in the Rule 23 sense. In FLSA collective action cases, opt-in plaintiffs join the case as party plaintiffs. *See Errickson v. Paychex*, Inc., 447 F. Supp. 3d 14, 20 (W.D.N.Y. 2020).

[5] Bimbo's sur-reply brief argues that Plaintiffs mischaracterize *Scott* for the premise that "the conditional certification standard [ ] requires certification of any collective action alleging uniform misclassification." ECF No. 80-1 at 3 (citing ECF No. 78 at 11-12). The Court agrees that *Scott* does not require conditional certification of any action alleging uniform misclassification; Plaintiffs must show additional facts to support certification beyond the simple fact of alleged misclassification.

are classified as exempt pursuant to a common policy or scheme." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citing *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)). This modest factual showing cannot be satisfied via "unsupported assertions," but is a forgiving standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist. *Id.* (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)). During this initial determination the Court will not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," and "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Rodney*, 2023 WL 313929 at *4 (quoting *Lynch*, 491 F. Supp. 2d at 368-69).

The second step occurs after discovery. The Court will then examine the record and make a "factual finding regarding the similarly situated requirement; if the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

**B. Analysis**

Plaintiffs propose that the collective be defined as follows:

> All persons who are performing or have performed work as Distributors for Bimbo Bakeries USA and/or Bimbo Foods Bakeries Distribution LLC in the States of Connecticut, New York, or Vermont under a distributor agreement during the period commencing three years prior to the filing of the Complaint until the court-ordered deadline for such persons to opt into this case.[6]

ECF No. 63-1 at 4. Plaintiffs assert that Bimbo produces and distributes baked goods to retailers around the northeast using a network of warehouses and distributors.[7] They allege that Bimbo negotiates directly with retailers to set prices, allocate shelf space, and select products, which ties Distributors' income to Bimbo's actions. *Id.* at 3. Plaintiffs state that Distributors across Vermont, Connecticut, and New York are similarly situated with regard to their lack of control over business operations and profit margins, and that none receive overtime compensation despite "routinely work[ing] more than 40 hours per week." *Id.* at 4. They submit that Bimbo "uniformly requires Distributors to agree to its Distributor Agreement." *Id.* at 7.

Bimbo raises several objections to conditional certification of the collective action.

---

[6] Bimbo's briefing indicates that this proposed collective comprises 654 distributors. ECF No. 75 at 8.

[7] Bimbo refers to these as Independent Business Partners ("IBPs"). ECF No. 75 at 8. The Court will call them distributors without implying any legal judgment as to their employment status.

**1. Personal Jurisdiction**

Bimbo asserts that the Court should exclude distributors based in New York and Connecticut from conditional certification because the Court "lacks personal jurisdiction over the claims of IBPs outside of Vermont." ECF No. 75 at 22. Even in a federal question case, a federal court will apply the forum state's personal jurisdiction rules if "the federal statute does not specifically provide for national service of process." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). The FLSA does not provide for national service of process. *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019) (citing *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992)). Vermont's long arm statute authorizes the service of process (and therefore the exercise of jurisdiction) over out-of-state defendants "to the full extent permitted by the federal Due Process Clause." *State v. Atl. Richfield Co.*, 2016 VT 22 ¶ 10 (cleaned up) (citing 12 V.S.A. § 913). Therefore, the question is whether the Due Process Clause allows this Court to exercise jurisdiction over the claims of Distributors outside of Vermont.[8]

---

[8] There is a circuit split on this question. *Compare Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) *with Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 398 (6th Cir.

Supreme Court decisions have recognized two types of personal jurisdiction: "'general' (sometimes called "all-purpose") jurisdiction and 'specific' (sometimes called "case-linked") jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Vermont is not Bimbo's principal place of business nor place of incorporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (citing Lea Brilmayer et al., *A General Look at General Jurisdiction*, 66 Texas L. Rev. 721, 728 (1988)). Consequently, Bimbo is not "fairly regarded as at home" in Vermont and the Court does not have general jurisdiction over the claims of out-of-state opt-in plaintiffs. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

To establish specific jurisdiction, "a defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). When evaluating personal jurisdiction, a court must determine both "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction

---

2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865-66 (8th Cir. 2021); *see also* Adam Drake, *The FLSA's Bristol-Myers Squibb Problem*, 89 Fordham L. Rev. 1511 (2021).

over the defendant" and "whether the assertion of personal
jurisdiction over the defendant comports with 'traditional
notions of fair play and substantial justice' under the
circumstances of the particular case." *Waldman v. Palestine
Liberation Org.*, 835 F.3d 317, 326 (2d Cir. 2016) (quoting
*Daimler*, 571 U.S. at 126). Relevant considerations include "the
interests of the forum State and of the plaintiff in proceeding
with the cause in the plaintiff's forum of choice," *Kulko v.
Superior Court of Cal., City and County of San Francisco*, 436
U.S. 84, 92 (1978), and "the burden on the defendant." *World-
Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The
latter factor involves "practical problems resulting from
litigating in the forum" and the "more abstract matter of
submitting to the coercive power of a State that may have little
legitimate interest in the claims in question." *Bristol-Myers
Squibb Co.*, 582 U.S. at 263.

    In *Bristol-Myers Squibb Co.*, the Supreme Court evaluated
the outer boundaries of specific jurisdiction in state court
cases involving issues of state law that extend across state
lines. In that case, 86 California residents and 592 residents
of other states filed eight separate lawsuits in California
Superior Court asserting 13 state law claims against Bristol-
Myers Squibb ("BMS"), a large pharmaceutical company. *Id.* at
259. The nonresident plaintiffs did not have any ties to

California and while BMS sold the allegedly dangerous drug in California, it did not manufacture, package, or conduct other business activities in the state. The California Supreme Court applied a "sliding scale approach to specific jurisdiction" and found that "BMS' extensive contacts with California" permitted the exercise of specific jurisdiction notwithstanding a less direct connection between BMS' forum activities and the out-of-state plaintiffs' claims. *Id.* at 260.

The Supreme Court rejected this approach, explaining that "a defendant's general connections with the forum are not enough" to authorize a state court to exercise specific jurisdiction over state law claims of out-of-state plaintiffs. *Id.* at 264. The Fourteenth Amendment's Due Process "limits the power of a state court to render a valid personal judgment against a nonresident defendant," *id.* at 261-62 (citing *World–Wide Volkswagen Corp.*, 444 U.S. at 291), and "[w]hat is needed . . . is a connection between the forum and the specific claims at issue." *Id.* at 265. The Court concluded that because the relevant plaintiffs were not California residents, did not suffer harm in that state, and did not purchase or consume the drug in that state, "the California courts cannot claim specific jurisdiction." *Id.* at 265. However, the Court left open whether "the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at

269 (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484
U.S. 97, 102 (1987)).

The Court concludes that it has jurisdiction over the
claims of putative class members located in New York and
Connecticut. Federal Rule of Civil Procedure 4(k) outlines the
territorial limits over where a federal court may serve a
summons. *See Walden*, 571 U.S. at 283 ("[A] federal district
court's authority to assert personal jurisdiction in most cases
is linked to service of process on a defendant."). Rule
4(k)(1)(A) establishes that a court may establish jurisdiction
over a defendant who is "subject to the jurisdiction of a court
of general jurisdiction in the state where the district court is
located." As noted above, Vermont state courts may exercise
jurisdiction over nonresident defendants to the "full extent
permitted by the federal Due Process Clause." Therefore, this
Court may too.

Bimbo does not dispute that this Court has personal
jurisdiction over the claims brought by Vermont Distributors.
Bimbo had sufficient contact with Vermont to be subject to the
jurisdiction of its state courts, and therefore this Court. And
once a defendant is properly in federal court for an alleged
violation of a federal statute, that federal statute (and the
due process clause) governs the parameters of that lawsuit. The
FLSA provides that an allegedly wronged employee may initiate an

action against the employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The collective action provision clearly indicates Congressional intent to consolidate and standardize FLSA litigation – provided that the employer-defendant has been constitutionally haled into a "court of competent jurisdiction" in the first place. *Id.*; *see also Waters*, 23 F.4th at 96-97 (explaining that "the FLSA and its legislative history show that Congress created the collective action mechanism to enable all affected employees working for a single employer to bring suit in a single, collective action."); *Hoffmann-La Roche*, 493 U.S. at 170 ("A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

Unlike in *Bristol-Myers Squibb*, subjecting Bimbo to personal jurisdiction in Vermont for alleged FLSA violations does not allow plaintiffs to avail themselves of the laws of a state that the defendant did not expect. The out-of-state plaintiffs in *Bristol-Myers Squibb* had no connection to California law, and BMS had no way of anticipating that drug users in Texas would assert violations of California law in California state courts. Without the putative mass tort action

at issue in that case, it would have been impossible for those Texas residents to sue BMS for violating California law at all. Here, though, plaintiffs have properly haled Bimbo into federal court in Vermont for an alleged violation of federal law. They now seek to join out-of-state distributors in the action for violations of the same law – a law that Bimbo knew applied in New York and Connecticut as well as in Vermont. In other words, allowing personal jurisdiction over out-of-state claims in FLSA collective action cases does not present the same concern over choice-of-law shopping as *Bristol-Myers Squibb.*

The factors underlying personal jurisdiction analysis support this conclusion. Plaintiffs obviously have an interest in proceeding with the cause in their forum of choice. *Kulko*, 436 U.S. at 92. But the primary concern is the burden on the defendant. *Bristol-Myers Squibb*, 582 U.S. at 263. Forcing Bimbo to litigate an interstate collective action in Vermont federal district court may be logistically inconvenient, but Bimbo has not disputed that the Court has valid personal jurisdiction over it with regard to the claims brought by Vermont distributors. The added burden associated with allowing out-of-state claims is marginal (and may ultimately reduce litigation costs).

The *Bristol-Myers Squibb* Court explained that considering the burden on the defendant "also encompasses the more abstract matter of submitting to the coercive power of a State that may

16

have little legitimate interest in the claims in question." *Id.*
This federalism interest "may be decisive." *Id.* The federalism
concerns at play here are substantially different from those in
*Bristol-Myers Squibb*. This case does not require consideration
of the competing interests of different states in applying their
own laws. There is no dispute that Bimbo is governed by the FLSA
nationwide. The question of where it must litigate its
compliance with federal standards is much different from the
question of whether a defendant must defend itself against state
law claims altogether.

Accordingly, the Court has personal jurisdiction over the
putative collective members outside of Vermont.

**2. The FLSA's "Similarly Situated" Requirement**

Because the Court has jurisdiction over putative out-of-
state plaintiffs' claims, it must evaluate whether those
plaintiffs are sufficiently "similarly situated" to the Vermont
Distributors to warrant collective action certification. As
explained above, this is a preliminary determination that
requires plaintiffs to make a "modest showing" that plaintiffs
and opt-in plaintiffs "share a similar issue of law or fact
material to the disposition of their FLSA claims." *Scott*, 954
F.3d at 516; *Neff v. Flower Foods, Inc.*, No. 5:15-CV-254, 2016
WL 11808327, at *2 (D. Vt. Nov. 7, 2016). While this modest
factual showing cannot be satisfied by unsupported assertions or

conclusory allegations, it remains "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 717CV03556NSRJCM, 2019 WL 1417125, at *2 (S.D.N.Y. Mar. 29, 2019) (quoting *Myers*, 624 F.3d at 555).[9]

Each Distributor has entered into a Distribution Agreement ("DA") with Bimbo that identifies the Distributor as an independent contractor. ECF No. 78 at 4 ("Bimbo uniformly classifies all its Distributors as independent contractors instead of employees."); ECF No. 75 at 10 ("These IBPs entered into varying DAs with BFBD or its varying affiliates.").[10] Each

---

[9] The Second Circuit employs the "economic reality test" to determine whether individuals are properly characterized as independent contractors or employees. *See, e.g., Saleem v. Corporate Transp. Grp. Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017). This is a fact-specific inquiry grounded in "economic reality rather than technical concepts," *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008), and the ultimate question is whether "the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988). Any merits decision on the economic reality would be premature, so the Court will focus solely on whether plaintiffs are similarly situated to one another in relation to their shared employer (Bimbo).
[10] Bimbo asserts that these DAs "vary materially" and come in "at least ten different forms." ECF No. 75 at 10. As the District of New Hampshire noted in *Camp v. Bimbo Bakeries USA, Inc.*, "the court need not resolve whether there are, indeed, material differences in those agreements [at this phase of the litigation]. That matter can be addressed at the next stage when, presumably, defendants will move to 'decertify' the

DA grants a Distributor exclusive distribution rights over a particular geographic area. Some Distributors may hire others to conduct all or part of the work for them, *see* ECF No. 75-7 at 3 (one distributor hired "around 25 employees"), and some may have the right to sell their territory to someone else. *See* ECF No. 75-6 at 3. It is undisputed that Bimbo does not pay overtime to any Distributors.

Plaintiffs allege that they and opt-in plaintiffs are similarly situated because both must deliver Bimbo's products on terms set by Bimbo. ECF No. 63-1 at 3. The parties vigorously dispute whether Bimbo has control over Distributors' work. *Compare* ECF No. 75 at 16 ("[O]ther IBPs solely determine the amount of product they order and have not experienced anyone changing their order.") *with* ECF No. 78 at 5 (describing Plaintiffs' "inability to control product orders or pricing."). Distributors' control over their resale terms, ordering schemes, and distribution pattern impacts whether they are properly classified as independent contractors or employees under the FLSA. The Court concludes that deposition testimony from two named plaintiffs indicates that Bimbo exercised at least some level of control over the manner in which Distributors conducted their business operations. *See, e.g.*, ECF No. 78-2 at 17

---

collective." No. 18-CV-378-SM, 2019 WL 440567, at *2 n.1. (D.N.H. Feb. 4, 2019)

(Provencher deposition stating that Bimbo took control over "every aspect of the business."); *id.* at 135 (stating that Distributors do not negotiate prices with chain stores); ECF No. 78-3 at 179 (McGuire deposition stating that "for chain stores, there's not much I can do [to maximize sales] other than fill in the area that is designated to me and keep it full."); *id.* at 385 (noting that Bimbo negotiated terms with one chain in particular).[11]

Additionally, the simple fact that each DA identifies Distributors as independent contractors counsels in favor of certifying the collective action. *Scott v. Bimbo Bakeries, USA, Inc.*, No. CIV.A. 10-3154, 2012 WL 645905, at *8 (E.D. Pa. Feb. 29, 2012). This is because overarching classification serves as evidence of a common policy with regard to the members of that classification – one that may violate the law. *See* ECF No. 58. And another important manner in which Distributors are similarly situated is with reference to overtime pay; specifically, that

---

[11] These depositions also indicate that Distributors made key independent determinations regarding how to conduct their operations. *See, e.g.,* ECF No. 78-2 at 30 (Provencher stating that he coordinated a promotion without Bimbo's involvement); *id.* at 32 (Provencher stating that he is able to override Bimbo's pre-programmed order numbers); ECF No. 78-3 at 289 (McGuire stating that he is able to change pre-programmed sales quantities). Again, the Court is not evaluating the merits of the economic reality test at this stage of the litigation; it is sufficient for Plaintiffs to show that they were similarly situated to one another in a manner material to the merits of the FLSA claim. They have satisfied that burden here.

none of them receive it. While this may be perfectly innocuous,
it is a shared characteristic relevant to the ultimate FLSA
determination.

Several other courts have conditionally certified
collective actions when plaintiffs have alleged that Bimbo
required them to service non-profitable customers. *See Camp*,
2019 WL 440567, at *2 (citing *Scott,* 2012 WL 645905); *Tate v.
Bimbo Bakeries USA, Inc.*, No. 218CV02315MSNTMP, 2019 WL
13156689, at *3 (W.D. Tenn. June 24, 2019) (noting that
plaintiffs submitted evidence of Bimbo's substantial control
over their work). These allegations are mirrored in plaintiffs'
Deposition testimony. Distributors specifically state that Bimbo
negotiated terms with chain accounts, and that even if those
accounts were not profitable, they were not allowed to cease
servicing them. ECF No. 78-4 at 158; ECF No. 78-2 at 132
(explaining that Provencher wanted to stop servicing one store
but was "pushed back with the threat of breach.").

This court has conditionally certified collective actions
in cases similar to this one. In *Neff v. Flower Foods,* the
District of Vermont concluded that route drivers who all signed
"similar distribution agreements" and did not receive overtime
payments were similarly situated for purposes of FLSA
conditional certification. 2016 WL 11808327 at *3. It also
explained the question of "whether the drivers [were] self-

employed" went to the "merits of the claim and [did] not disqualify Plaintiffs from seeking to form a [collective action] . . . [i]t is sufficient to demonstrate that they have been treated alike by the same employer for similar reasons." *Id.* Other federal courts reached the same result with respect to comparable Bimbo distributors around the country. *See, e.g., Camp*, 2019 WL 440567, at *5; *Scott*, 2012 WL 645905, at *10; *Tate*, 2019 WL 13156689, at *7; *Mejia v. Bimbo Bakeries USA, Inc.*, No. CV-16-00654-TUC-JAS, 2017 WL 6415357, at *5 (D. Ariz. Aug. 14, 2017); *Franze*, 2019 WL 1417125, at *4; *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-CV-02324-RBJ, 2017 WL 3190605, at *1 (D. Colo. July 19, 2017). While these cases do not control the outcome here, they provide support for the notion that Bimbo distributors can be considered "similarly situated" for conditional FLSA collective action certification purposes.

Bimbo argues that the named Plaintiffs lack knowledge of the terms of other DAs and do not know about Bimbo's practices in other states. ECF No. 75 at 4. But express knowledge of distributors in other locations is not necessary for conditional certification of a collective action so long has the plaintiff has provided evidence indicating that putative opt-in plaintiffs "share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516; *Tate,*

2019 WL 13156689, at *4 (certifying collective despite Bimbo's
argument that plaintiffs "do not have express knowledge of a
specific distributor in other locations").

Additionally, cases declining to conditionally certify FLSA
collective actions for lack of knowledge of similarly situated
plaintiffs generally involve sole plaintiffs without *any*
information regarding other group members. *See Tate*, 2019 WL
13156689, at *5-*6 (citing *Sutka v. Yazaki N. Am., Inc.*, No. 17-
10669, 2018 WL 1255767, at *12 (E.D. Mich. Mar. 12, 2018));
*Gaffers v. Sitel Worldwide Corp.*, No. 3-16-0128, 2016 WL 3137726
(M.D. Tenn. June 6, 2016). Here, Bimbo argues that named
plaintiffs have no knowledge of Bimbo's business practices
outside of the Sales Center located in Williston, Vermont. ECF
No. 75 at 11. Bimbo is correct that the deposition testimony
indicates limited knowledge of other distributors, but it also
reveals knowledge of what Plaintiffs perceive to be Bimbo's
standard business practices. *See* ECF No. 78-2 at 40-42 (Bimbo
introduced a new ordering system in 2022 that occasionally would
not allow Provencher to change orders); 58, 137 (Provencher has
no power to change certain prices); 146 ("[T]here are
performance standards. I've seen people breached out of their
route for not performing."); ECF No. 78-3 at 162 (McGuire told
by other distributors that "Bimbo negotiates the prices to pay
on what they sell, and I only get a percentage of that."); 345

(McGuire stating "I don't believe they [other distributors] do anything different than I do."). Plaintiffs' depositions also reveal common experience with Bimbo's ordering systems and distribution of "playbooks" that include "mandated" terms for servicing chain stores. *See* ECF No. 78-2 at 220 (describing chain playbooks and disclaiming input or control over terms) ECF No. 78-6 at 4 (Bimbo Hannaford manual stating "Displays Mandated").

Finally, while not dispositive, it is worth noting that judicial efficiency counsels in favor of issuing notice to individuals with arbitration agreements. As the District of Connecticut noted in an unrelated case, "previous litigation is extremely probative of the question under discussion. The fact that other individuals already have brought similar claims shows that there are, in fact, others who have asserted . . . experiences like Plaintiff's." *Headly v. Liberty Homecare Options, LLC*, No. 3:20-CV-00579 (OAW), 2022 WL 2181410, at *7 (D. Conn. June 16, 2022). Rather than wait for these claims to be brought on a piecemeal basis, the Court concludes that it is worthwhile to consolidate the litigation in a single venue.

Finally, Bimbo argues that the Court should deny Plaintiffs' motion for conditional certification because Plaintiffs' declarations are ostensibly contradicted by their deposition testimony. ECF No. 75 at 8. In support, Bimbo cites

*Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 486 (S.D.N.Y. 2016). In that case, the Southern District of New York declined to conditionally certify a class in part because plaintiffs' deposition testimony conceded – contrary to their declarations – that they were actually paid for the overtime hours that they worked, which were the subject of the lawsuit in the first place. *Id.* at 486-87. Here, Bimbo points out that Plaintiff Martel "admitted that he has not worked 40 hours on his distribution business for years." ECF No. 75 at 13. This is a requirement for an unpaid overtime award and will likely vary from distributor to distributor. Whether each opt-in plaintiff actually worked more than 40 hours per week will be evaluated at the second step of the conditional certification process. *See* 29 U.S.C. § 207(a)(1). The other alleged falsehoods are not so egregious as Bimbo makes them out to be, and do not warrant dismissal or decertification at this stage.[12]

---

[12] For instance, Bimbo states that contrary to Plaintiffs' representations that the computerized ordering system tells them how much product to order and deliver, deposition testimony indicates that they have control over this process. This is not exactly true. While the deposition testimony is confusing and unclear, it seems that Plaintiffs' orders are at least occasionally overridden. *See* ECF No. 78-4 at 177 (stating several different ways in which orders will change including "[t]he computer system itself has the ability to override our orders."). Many of Bimbo's other complaints have to do with the terminology that Plaintiffs use to refer to their businesses. It notes that Plaintiff Provencher called his business a "route sales business" and referred to the customers as his own customers, not Bimbo's. ECF No. 75 at 14. Plaintiffs' deposition

The point of FLSA conditional certification is "simply to obtain judicial permission to notify other interested and similarly situated parties." *Tate*, 2019 WL 13156689 at *4. Defendants have submitted declarations indicating that at least some distributors exercise substantial control over their job functions, ECF Nos. 75-6, 75-7, and state that different distributors engage with their jobs in different ways, *see* ECF No. 75 at 15-19, but Plaintiffs have made their "modest showing" that distributors are similarly situated with regard to Bimbo's ordering process, pricing, and chain service requirements. Defendants may revisit this factual question upon a more developed record.

## 3. Exceptions

Bimbo next argues that even if the Court decides to conditionally certify the collective action, it should not issue notice to the 325 distributors with arbitration agreements in their DAs. ECF No. 75 at 22. This issue is percolating throughout the federal judiciary. *See Davis v. Dynata*, LLC, No.

---

terminology does not warrant dismissal of the case, and ultimately has little bearing on the economic realities test. Finally, Bimbo states that "Plaintiffs' declarations suggest they must and do perform all of the work on their distributorship businesses themselves" which is allegedly untrue. ECF No. 74 at 14. The declarations use the first person when referring to Plaintiffs' job responsibilities, but do not claim that Plaintiffs never enlist help. *See* ECF No. 63-3, 63-5, 63-7. Regardless, the relevance of delegating responsibilities is better litigated later.

3:22-CV-1062 (SVN), 2023 WL 6216809, at *18 (D. Conn. Sept. 25,
2023) (explaining that some courts err on the side of being
overinclusive when sending notice to potential plaintiffs). "The
Second Circuit has not spoken to the precise issue of whether
notice may be sent to potential opt-in plaintiffs when a
defendant asserts that such recipients signed arbitration
agreements that make them ineligible to join a proposed
collective." *Aboah v. Fairfield Healthcare Servs.*, Inc., 662 F.
Supp. 3d 192, 211 (D. Conn. 2023). The Fifth, Sixth, and Seventh
Circuits have held that – under certain circumstances – the
existence of valid arbitration agreements will preclude issuance
of judicial notice in an FLSA collective action. *Clark v. A&L
Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir.
2023); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir.
2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th
Cir. 2019). The "weight of jurisprudence" among district courts
in this Circuit, however, "favors erring on the side of being
overinclusive when sending notice to potential plaintiffs."
*Aboah*, 662 F. Supp. 3d at 211 (internal quotations omitted).

Notably, many of the Second Circuit cases declining to
issue notice to individuals with arbitration agreements result
from the courts' preliminary determinations that those
arbitration agreements are valid and enforceable. *See, e.g.*,
*Davis*, 2023 WL 6216809 at *8; *Guzman v. Three Amigos SJL Inc.*,

117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015) (declining to consider potential arbitration defense when defendants had not moved to compel arbitration). That is not the case here.[13] Bimbo has submitted the text of the arbitration agreements applicable to each of the 325 ostensibly bound distributors (along with their names), ECF No. 75-11 at 29, but has not moved the Court to compel arbitration – and more importantly, neither party has briefed whether these agreements are valid and enforceable. As the Sixth Circuit noted in its consideration of the issue, enforceability of an arbitration agreement is a difficult determination to make "in absentia" because it is a fact-specific issue. *Clark*, 68 F.4th at 1011; *see also Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL, 2019 WL 4493429, at *15 (S.D.N.Y. Sept. 9, 2019) ("[D]etermining the enforceability of an arbitration agreement is the type of fact-bound merits inquiry that should not take place at the first stage of the conditional collective action approval process.") (quotations omitted).

There is insufficient information on the question of enforceability for the Court to make this determination at this stage.[14] Consistent with standard practice in this Circuit, the

---

[13] Nor can it be, because those agreements are between defendants and parties not before the Court.

[14] At least one court has held that the mere existence of an arbitration agreement – without evaluating its enforceability –

Court will allow notice to be sent to putative plaintiffs with arbitration agreements. Bimbo may assert arbitration agreements as a reason for decertification at later stages of litigation. *Cf. Filho v. OTG Mgmt., LLC*, No. 19-CV-8287 (ALC)(SN), 2021 WL 1191817, at *7 (S.D.N.Y. Mar. 30, 2021).

Bimbo also seeks to exclude collective notice based on two additional FLSA exemptions. *See* ECF no. 75 at 29-30. These are "outside salesmen" and "motor carrier" exemptions. *See* 29 C.F.R. § 541.500(a)(1) (administrative guidance on the outside sales exemption); 29 C.F.R. § 782.2 (administrative guidance on the motor carrier exemption). But consideration of these exemptions requires initial determination of whether Plaintiffs were properly classified as independent contractors or employees. In *Sydney v. Time Warner Entertainment-Advance/Newhouse Partnership*, for instance, the defendant company conceded that plaintiffs were employees but argued that they were exempt from the FLSA's overtime requirements because of their "primary duty" as salesmen. No. 513CV286FJSTWD, 2021 WL 2662047, at *3

---

makes an FLSA plaintiff non-similarly situated for purposes of the conditional certification process. *Errickson*, 447 F. Supp. 3d at 27. The Court disagrees with this conclusion. The existence of an arbitration agreement goes to the availability of a remedy, not whether the plaintiff is similarly situated with regard to an employer who has allegedly treated it illegally. To hold otherwise would be contrary to the Second Circuit's guidance that "dissimilarities in other respects should not defeat collective treatment." *Scott*, 954 F.3d at 516.

(N.D.N.Y. Mar. 30, 2021), report and recommendation adopted, No. 513CV286FJSTWD, 2022 WL 474146 (N.D.N.Y. Feb. 16, 2022). Here, Bimbo denies that distributors are employees in the first place. As discussed above, Plaintiffs have provided sufficient evidence on this question to show that they and putative opt-in plaintiffs are similarly situated at least with regard to that threshold question. Further briefing and factual development on the outside sales and motor carrier exemptions may reveal that some or all plaintiffs should be exempted from the FLSA's requirements (or that the collective should be decertified), but the Court cannot make that conclusion at this stage. *Cf. Bracamontes*, 2017 WL 3190605, at *2 ("[D]efendant argues that it is clear that the 'outside sales' exemption to the FLSA applies and, therefore, that plaintiffs' FLSA claims are meritless. . . . I disagree. For starters, this seems like a "step two" inquiry."); *Scott*, 2012 WL 645905, at *10 (deferring consideration of FLSA exemptions to the second stage of conditional certification); *Tate*, 2019 WL 13156689, at *4 ("[I]t is not appropriate for this Court to determine substantive issues and issues of particular fact regarding each putative plaintiff's exemptions until the second phase of certification.").[15]

---

[15] Notably, Bimbo argues that plaintiffs "may" be subject to the motor carrier exemption "if" they are considered employees.

C. **Notice and the Statute of Limitations**

The Supreme Court has emphasized the "managerial responsibility" of district courts in issuing notice to potential plaintiffs in FLSA actions. *See Hoffman-La Roche*, 493 U.S. at 171-72. To ensure "timely, accurate, and informative" notice, the Court can resolve disputes about the content of the notice before it is issued. *Id.* at 172. Court-approved notice is proper in "appropriate cases," which lies within the discretion of district courts. *Lynch*, 491 F. Supp. 2d at 368.

Court-authorized notice is appropriate here. Because distributors have demonstrated a "factual nexus" that makes them similarly situated relative to Bimbo, facilitating collective action through judicial notice will allow plaintiffs "to lower individual costs" and will promote "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche*, 493 U.S. at 170. Additionally, as Plaintiffs note, the continued running of the statute of limitations counsels in favor of issuing notice to "prevent the continued erosion of these claims." *Lynch*, 491 F. Supp. 2d at 371; *McGlone v. Contract*

---

Because the threshold "employee" issue is an issue on which plaintiffs share a "similar issue of law or fact material to the disposition of their FLSA claims," the Court remains cognizant that "dissimilarities in other respects" – including exemption-related questions such as primary duties and the weight of the delivery vehicles – "should not defeat collective treatment." *Scott*, 954 F.3d at 516.

*Callers*, *Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("Normally in an FLSA collective action, the statute of limitations for each plaintiff runs when he or she files written consent with the court electing to join the lawsuit, not when the named plaintiff files the complaint.") (citing 29 U.S.C. § 256(b)).

Plaintiffs have requested that the Court equitably toll the statute of limitations "for the duration of the conditional certification proceedings." ECF No. 63-1 at 9. A court may, in its discretion, equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances when (1) extraordinary circumstances prevented plaintiff from timely filing his or her claim and (2) the plaintiff pursued his or her claim with reasonable diligence during the requested period. *King v. Fedcap Rehab. Servs., Inc.*, No. 20-CV-1784 (VSB), 2022 WL 292914, at *12 (S.D.N.Y. Feb. 1, 2022) (quoting *McGlone*, 867 F. Supp. 2d at 445). Several courts have held that equitable tolling may be appropriate when motions have been "pending for several months." *Id.*

The Court finds that equitable tolling of the statute of limitations is inappropriate in this case. Because the equitable tolling standard is case-specific, "equitable tolling is generally not appropriate at the conditional certification stage." *Ni v. HSBC Bank USA, N.A.*, No. 23CV00309ASKHP, 2024 WL

323284, at *7 (S.D.N.Y. Jan. 29, 2024) (quoting *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017)). Bimbo has not manufactured extraordinary delays in this litigation. It filed a counterclaim that several courts have allowed to proceed past motions to dismiss, *see, e.g.*, *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188, 189 (D.D.C. 2010), and after Plaintiffs filed their motion for conditional certification, Bimbo promptly engaged in discovery so that it could fairly respond to the motion. Additionally, when the parties submitted a stipulated discovery schedule, they agreed that Bimbo would have 30 days to respond to the motion for conditional certification. *See* ECF Nos. 59, 64. Therefore, Plaintiffs' request for equitable tolling is denied. This denial is without prejudice to any later application by a plaintiff for equitable tolling that "conforms to the requirements of the equitable tolling doctrine." *Santiago v. Cuisine By Claudette, LLC*, No. 23CV2675OEMRER, 2023 WL 8003323, at *8 (E.D.N.Y. Nov. 17, 2023) (quoting *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 660 (S.D.N.Y. 2017)).

Plaintiffs' proposed collective action includes any individual that worked as a distributor for Bimbo in the three years prior to the filing of the Complaint. ECF Mo. 63-1 at 4. Because the statute, 29 U.S.C. § 256(b), explains that an action is "considered to be commenced" when "written consent is filed

33

in the court," the notice should only be sent to individuals that worked as distributors in the three years prior to the issuance of this Order.

The remaining issues regard the parameters of the notice. There are four disputed points: whether to issue notice by mail *and* email, whether Plaintiffs' counsel or a third-party should administer the notice, whether a 90-day notice period and reminder notice is appropriate, and whether the notice should inform distributors that they could be liable for costs if they lose. ECF No. 75 at 32.

The Court grants Plaintiffs' request to send notice by both mail and email. Cases disapproving of email notice reference the "risk of [the communication] being modified or more broadly disseminated than the parties originally intended." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) (citing *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014)). But notice by email has become commonplace, and given the reality of modern communication, email notification is far more likely to reach potential opt-in plaintiffs than mail alone. *Id.; see also Camp*, 2019 WL 440567 at *5 (authorizing distribution of notice by mail, email, and text).

The Court denies Bimbo's request to contact potential plaintiffs via third-party administrator. The only case Bimbo

cites in support of this request is *Davine v. Golub Corp.*, in which the parties agreed to have a third-party administer oversee the notice. No. CV 14-30136-MGM, 2015 WL 12966278, at *1 (D. Mass. June 11, 2015). That is not the case here, and it is standard practice for plaintiffs' counsel to contact potential opt-in plaintiffs. *See, e.g.*, *Neff,* 2016 WL 11808327, at *4.

The Court grants Bimbo's request for a 60-day opt-in period. Courts in the Second Circuit have "coalesced around a standard 60-day notice period." *Mark v. Gawker Media LLC*, No. 13-CV-4347 AJN, 2014 WL 5557489, at *1 (S.D.N.Y. Nov. 3, 2014). 90-day notices are typically granted when the period is agreed-upon or special circumstances require a longer timeframe. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011). Here, Plaintiffs have not offered any particularized need for a 90-day opt-in period. Additionally, provision of notice by email will reduce delays associated with notice by mail, mitigating the need for a longer opt-in period. The Court sees no reason to break from standard practice and extend the opt-in period beyond 60 days.

The Court grants Plaintiffs' request to send a reminder notice. There is little caselaw in the Second Circuit addressing the propriety of reminder notices, and there is "no general consensus among district courts in other circuits." *Guzelgurgenli*, 883 F. Supp. 2d at 357. However, several courts

have authorized reminder notices in order to notify potential opt-in plaintiffs "of the pendency of the action." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *9 (E.D.N.Y. Sept. 30, 2021). The Court agrees that such reminder notice is reasonable here but given that the notice period will be 60 days, one reminder issued on the 30th day will be adequate. The parties shall confer over the contents of the reminder notice to generate acceptable terms.

Finally, Plaintiffs need not inform potential plaintiffs that they may be liable for costs if they lose. The weight of authority counsels against including such notice. *See, e.g.*, *Racey v. Jay-Jay Cabaret, Inc.*, No. 15 CIV. 8228 (KPF), 2016 WL 3020933, at *9 (S.D.N.Y. May 23, 2016). Courts have noted that reference to costs may be "unnecessary and potential confusing," or worse, may pose an "*in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree." *Id.* (citing *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 4950 (JFB) (ARL), 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007)). Additionally, Plaintiffs' proposed notice indicates that Plaintiffs' counsel are paid on a contingency fee basis, which means that there will likely be no

attorney's fees associated with the case. ECF No. 63-2 at 3. Accordingly, Bimbo's request is denied.[16]

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for FLSA conditional certification and judicial notice (ECF No. 63) is **granted** subject to the preceding conditions. Bimbo's motion to file a sur-reply brief (ECF No. 80) is also **granted**. Its motion for oral argument (ECF No. 85) is **denied**. Plaintiffs are authorized to send notice to a collective consisting of

> All persons who are performing or have performed work as Distributors for Bimbo Bakeries USA and/or Bimbo Foods Bakeries Distribution LLC in the States of Connecticut, New York, or Vermont under a distributor agreement during the period commencing three years prior to the issuance of this Order until the court-ordered deadline for such persons to opt into this case.

Notice to the members of the collective may be sent as presented in ECF No. 63-2. Bimbo must provide Plaintiffs' counsel with names, dates of employment addresses, and email addresses of such individuals within 30 days of this Order. This information should be provided in a reasonably accessible data file. Plaintiffs are authorized to send a reminder notice on the 30th day of the notice period.

---

[16] Bimbo's proposed notice references Flowers (presumably a defendant in a prior case). ECF No. 63-2 at 2. That should be corrected. Additionally, if Plaintiff Martel indeed withdraws from the case, the notice should be corrected to reflect that. ECF No. 63-2 at 2 ("Three current distributors (Plaintiffs) have sued Bimbo.").

DATED at Burlington, in the District of Vermont, this 2nd day of April, 2024.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge