```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

ARTHUR PROVENCHER, MICHAEL McGUIRE, :
and RONALD MARTEL,                  :
on behalf of a class,               :
                                    :
         Plaintiffs,                :
                                    :
v.                                  :   Case No. 2:22-cv-198
                                    :
BIMBO BAKERIES USA, INC. and BIMBO  :
FOODS BAKERIES DISTRIBUTION LLC,    :
                                    :
         Defendants.                :

## OPINION AND ORDER

Plaintiffs Arthur Provencher, Michael McGuire, and Ronald Martel[1] filed this lawsuit against Bimbo Bakeries and its corporate affiliate (together "Bimbo") alleging misclassification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). Bimbo filed a motion to dismiss and a counterclaim. The Court denied Bimbo's motion to dismiss and dismissed its counterclaim. *Provencher v. Bimbo Bakeries USA, Inc.*, No. 2:22-CV-198, 2023 WL 8436279 (D. Vt. Dec. 5, 2023). It

---

[1] Plaintiff Martel filed a motion to withdraw from the case. ECF No. 88. That motion sought dismissal without prejudice, and requested that both parties "bear their own costs and attorney fees" with regard to Martel's claims. *Id.* at 2. Plaintiffs' filing noted that Bimbo "did not consent and instead demanded costs and attorney fees." *Id.* at 1. Bimbo's deadline to respond to Plaintiffs' motion was May 6. It has not responded. Accordingly, Martel's motion to withdraw from the case is granted without prejudice; both parties will bear their own costs and fees related to Martel's claims.

then granted Plaintiffs' motion for conditional collective action certification and judicial notice under the FLSA, 29 U.S.C. § 207(a)(1), 216(b). ECF No. 89. The Court's Order (the "Collective Order") concluded that the Court has personal jurisdiction over Defendants with regard to the claims of potential plaintiffs in New York and Connecticut as well as Vermont, and therefore allowed Plaintiffs to send opt-in notices to putative out-of-state plaintiffs. *Id.* at 17. Bimbo then motioned for the Court to certify appeal to the Second Circuit on the personal jurisdiction issue. ECF No. 90. It also filed a motion to stay execution of the Collective Order. ECF No. 92. The Court granted that stay pending resolution of Bimbo's motion for interlocutory appeal, ECF No. 97, and now **grants** Bimbo's motion to appeal to the Second Circuit.

## DISCUSSION

The issue in this case arises from the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) ("*BMS*"). In that case, 86 California residents and 592 residents of other states filed eight separate complaints in California Superior Court asserting 13 California law claims against Bristol-Myers Squibb ("BMS"). The nonresident plaintiffs did not have any ties to California and while BMS sold the allegedly dangerous drug in California, it did not manufacture, package,

or conduct other business activities in the state. The Supreme Court held that "a defendant's general connections with the forum are not enough" to authorize a state court to exercise specific jurisdiction over state law claims of out-of-state plaintiffs. *Id.* at 264. It noted that the Fourteenth Amendment's Due Process Clause "limits the power of a state court to render a valid personal judgment against a nonresident defendant," *id.* at 262 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)), and explained that "[w]hat is needed . . . is a connection between the forum and the specific claims at issue." However, the Court left open whether "the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 269.

In the Collective Order, this Court held that the *BMS* personal jurisdiction limitation does not preclude it from exercising jurisdiction over plaintiffs in Connecticut and New York. It explained that Bimbo was properly haled into federal district court in Vermont by the Vermont distributors and held that once a defendant is properly in federal court for alleged violation of a federal statute, "that federal statute (and the due process clause) governs the parameters of that lawsuit." ECF No. 89 at 14. Because the FLSA explicitly authorizes plaintiffs to initiate lawsuits on behalf of "other employees similarly situated," this Court explained that it has jurisdiction over

3

such "similarly situated employees." *Id.* at 14-15 (quoting 29 U.S.C. § 216(b)). Several considerations supported this conclusion, including the fact that this case (unlike *BMS*) involved a federal statute rather than a state statute (mitigating forum-shopping concerns), *id.* at 16, the marginal added burden on Bimbo, *id.* at 16-17, and vertical and horizontal federalism interests. *Id.* at 17. Accordingly, the Court authorized Plaintiffs to send opt-in notices to Bimbo distributors in Vermont, New York, and Connecticut.

A district court may authorize interlocutory appeals when an it concludes that an order (1) "involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Mei Xing Yu v. Hasaki Rest.*, Inc., 874 F.3d 94, 98 (2d Cir. 2017). If the court concludes that interlocutory appeal is appropriate, it shall "state so in writing." *Id.* After it does so, the Court of Appeals may "permit an appeal to be taken . . . if application is made to it within ten days after the entry of the order." *Id.* This Court may amend its prior Order to include permission for a party to appeal. Fed. R. App. P. 5(a)(3).

**1. Controlling Question of Law**

The Second Circuit has explained that "resolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). While resolution of the *BMS* issue is not action-dispositive, it dramatically impacts the scope of the litigation (which, incidentally, may be dispositive from a settlement perspective). *See In re Enron Corp.*, No. 01-16034, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (stating that in order for an issue to be controlling, it must "at a minimum" materially affect the litigation's outcome). A ruling that this Court does not have jurisdiction over out-of-state plaintiffs would "avoid protracted and expensive litigation," for both the Court and the parties. *Harrington v. Cracker Barrel Old Country Store Inc.*, No. 21-00940, 2024 WL 342440, at *11 (D. Ariz. Jan. 30, 2024).[2] This issue is "controlling" for purposes of this litigation.

---

[2] The Court finds it worthwhile to note that expense and inconvenience stemming from an adverse decision are not, alone, justification for interlocutory review. If (as the Court ruled in the Collective Order) it is appropriate for the Court to exercise jurisdiction over out-of-state plaintiffs' claims, the efficiency burdens related to mass litigation are irrelevant. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)) ("Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'"); *O'Donnell v. Elgin, J. & E. Ry. Co.*, 193 F.2d 348, 353 (7th Cir. 1951) ("The jurisdiction of the Federal

Courts in the Second Circuit have also stated that issues warranting interlocutory review must present "pure questions of law." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (citing *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007)). Bimbo is correct that the *BMS* issue is a pure question of law. There is no dispute that out-of-state putative plaintiffs do not have any connection to Vermont. This Court's exercise of jurisdiction does not depend on facts relating to opt-in plaintiffs' connections to Vermont. *Cf. Jenkins v. Miller*, No. 2:12-CV-184, 2013 WL 12226891, at *1 (D. Vt. Dec. 10, 2013) (denying motion for interlocutory review because "a reviewing court [would have] only a preliminary and incomplete record to examine.").

Plaintiffs argue that the personal jurisdiction issue does not involve a "controlling issue of law" because the Collective Order made a preliminary determination regarding which plaintiffs may opt into the litigation. ECF No. 98 at 2. For support, they rely on *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d

---

courts is mandatory in the sense that such a court is without discretion to disclaim it in a case where a plaintiff has brought himself within the terms of the Federal Act."). Regardless of whether it would be the "epitome of inefficiency," the Court must exercise personal jurisdiction when appropriate. Therefore, the other factors of the 28 U.S.C. § 1292(b) analysis carry more weight than an assessment of whether the legal issue is "controlling."

863 (2d Cir. 1996). In that case, the district court certified an appeal on the question of the circumstances under which "a federal court may exercise jurisdiction over a foreign corporation on the basis of its wholly-owned subsidiary's presence and activity in New York." *Id.* at 864. The Second Circuit rejected that appeal as improvidently granted. *Id.* at 867. It explained that the district court was best situated to make factual determinations regarding personal jurisdiction. *Id.* Plaintiffs also point to several similar cases from this district, arguing that "preliminary determinations" on personal jurisdiction are improper subjects for interlocutory appeal. ECF No. 98 at 5-6 (citing *Jenkins*, 2013 WL 12226891, at *1; *Retail Pipeline, LLC v. JDA Software Grp., Inc.*, No. 2:17-CV-00067, 2018 WL 2298355, at *3 (D. Vt. May 21, 2018)).

*Koehler* and related personal jurisdiction cases are not controlling because the Collective Order's legal conclusion regarding personal jurisdiction was not preliminary. In *Koehler*, *Jenkins*, and *Retail Pipeline*, there were facts relevant to personal jurisdiction that the district courts had not yet considered. *Koehler*, 101 F.3d at 867 (noting that regardless of outcome on appeal, the district court would have to conduct further proceedings to determine whether the defendant was subject to jurisdiction); *Jenkins*, 2013 WL 12226891 at *1 (rejecting interlocutory review because "reversal of the order

would not terminate the action, even for these Defendants"); *Retail Pipeline*, 2018 WL 2298355, at *3 (denying interlocutory review because the court had not yet "determined whether Plaintiffs satisfied their ultimate burden of establishing personal jurisdiction over Defendant") (quotations omitted). Here, the Court reached a purely legal conclusion: that it may constitutionally exercise jurisdiction over opt-in plaintiffs located out-of-state. Tellingly, regardless of the Second Circuit's decision on this issue,[3] there will be no reason for the Court to conduct further "jurisdictional discovery" regarding putative out-of-state plaintiffs.[4] And Plaintiffs have not pointed to any particular facts that require further resolution for an appellate court to make a determination on the *BMS* personal jurisdiction issue (because there are none).

Finally, Plaintiffs state that this issue will not become "controlling" until the out-of-state opt-in plaintiffs become

---

[3] To be sure, if the Second Circuit affirms this Court's decision, there will still be unresolved fact issues impacting whether the Court can exercise jurisdiction over the out-of-state plaintiffs. But those facts all go to whether the plaintiffs in New York and Connecticut are "similarly situated" to the named plaintiffs. 29 U.S.C. § 216(b). They do not go to the threshold question of whether a court *may* certify a collective action including plaintiffs from multiple states; no further factual development is necessary (or possible) for resolution of that issue.

[4] Unless some of those plaintiffs were to state that they had "minimum contacts" with Vermont, an issue that the Court would address only if it did not have jurisdiction over similarly situated out-of-state claims by virtue of the FLSA itself.

parties to the lawsuit – that is, when they file opt-in notices with the Court, which they cannot do until the Court allows notice to be distributed. *Cf. Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 91 (1st Cir. 2022) (holding that "opt-ins who filed consent forms with the court became parties to the suit"). Because this Court stayed execution of its Collective Order pending briefing and resolution of this interlocutory appeal motion, notice has not been sent to opt-in plaintiffs. Accordingly, none of the out-of-state putative opt-in plaintiffs are yet parties to this case.[5]

The question becomes whether this issue is suitable for interlocutory review notwithstanding that the Second Circuit would be addressing this Court's personal jurisdiction over the

---

[5] Plaintiffs note that at least three other appellate courts to have considered the issue have done so after the conclusion of the opt-in period. ECF No. 98 at 8 (citing *Waters*, 23 F.4th at 86-87; *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 371 (3d Cir. 2022); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 398 (6th Cir. 2021). However, two courts authorized interlocutory appeal after conditional certification; those cases are currently pending before the Seventh and Ninth Circuits. *Vanegas v. Signet Builders*, Docket No. 23-2964 (7th Cir. 2023); *Harrington v. Cracker Barrel Old Country Store Inc.*, Docket No. 24-742 (9th Cir. 2024). No court (to this Court's knowledge) has declined to hear an appeal on this issue because out-of-state plaintiffs have not yet opted in, and for the reasons articulated above, the Court finds that interlocutory review of this issue is appropriate.

claims of individuals not yet party to the case. The Court concludes that it is, for two reasons.[6]

First, the issue is properly characterized as whether this Court may authorize the dissemination of notice to out-of-state putative plaintiffs. In *Hoffmann-La Roche Inc. v. Sperling*, the Supreme Court explained that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 n.9 (2d Cir. 2010) (explaining that *Hoffman-La Roche* applies to FLSA cases as well as ADEA cases); *see also Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023) (explaining that the district court may only send notice to individuals "eligible to join the suit"). The legal question at this stage of litigation is whether the putative out-of-state collective members are "potential plaintiffs" under *Hoffman-La Roche*, giving the Court authority to notify them of the pending action and giving them the right to opt into the litigation.[7] They can

---

[6] At the outset, it is worth noting that this "non-party" issue does not fit neatly into the framework for evaluating interlocutory appeals. The legal issue is still "controlling," for the reasons outlined above.

[7] The Supreme Court has counseled that courts must exercise restraint in authorizing notice for fear of claim solicitation. *Hoffman-La Roche*, 493 U.S. at 174. Several courts have emphasized the important role that district courts play in monitoring the distribution of notice to "potential plaintiffs" to avoid solicitation. *See, e.g.*, *Bigger v. Facebook, Inc.*, 947

only be "potential plaintiffs" if the Court may exercise jurisdiction over their claims. This appeal is not about the rights of parties not before the Court; it is about this Court's power to authorize notice and opt-in privileges to those parties.[8]

The second reason why appeal is appropriate notwithstanding that out-of-state plaintiffs are not yet party to the case is that this issue presents a "case" or "controversy" cognizable under Article III. The Supreme Court has "long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*,

---

F.3d 1043, 1049 (7th Cir. 2020) ("To counter [the dangers of settlement pressure and claims solicitation], trial courts have discretion to monitor the preparation and distribution of notice to 'potential plaintiffs,' who may opt in to the action.") (citations omitted); *Clark*, 68 F.4th at 1010 ("[N]otice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own."). This Court is aware of the harm that may result from improperly sending notice to parties outside of its jurisdiction.

[8] Plaintiffs argue that this becomes an appeal about "whether nonparties can assert jurisdiction, where those nonparties have not had the opportunity to join the case or assert their interests." ECF No. 98 at 7. This is not an accurate characterization of the issue because nonparties may only join the case and assert their interests if the Court may properly authorize them to do so in the first place. The appeal would resolve an actually litigated issue in this case: whether the Court may authorize Plaintiffs to send an opt-in notice to putative collective members that reside in New York and Connecticut.

11

592 U.S. 53, 58 (2020). Here, there is a genuine, live dispute between adverse parties. That dispute implicates a threshold question of the Court's power to notify putative plaintiffs of this case (and, by extension of that threshold question, a subsidiary question of whether the individuals seeking to be joined may invoke this Court's jurisdiction). As Bimbo explains, "[j]ust as it was not advisory for this Court to decide that it *has* personal jurisdiction . . . it would not be advisory for the Second Circuit to decide that the Court *does not have* personal jurisdiction over their claims." ECF No. 100 at 6 (emphasis in original).

### 2. Substantial Ground for Difference of Opinion

As the Court noted in its order conditionally certifying Plaintiffs' collective action, there is a circuit split on the personal jurisdiction issue. *Compare Waters*, 23 F.4th at 97 (holding that courts have jurisdiction over out-of-state putative FLSA plaintiffs) *with Fischer*, 42 F.4th at 370 (holding that courts do not have such jurisdiction); *Canaday*, 9 F.4th at 398 (same); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865-66 (8th Cir. 2021) (same). The Second Circuit has not yet weighed in on the issue, and district courts in the Circuit have fractured on the question. *Compare Bethel v. BlueMercury, Inc.*, No. 21 CIV. 2743 (KPF), 2022 WL 3594575, at *10 (S.D.N.Y. Aug. 22, 2022) (district court concluding that it could not exercise

12

out-of-state jurisdiction under *BMS*); *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 278 (S.D.N.Y. 2019) (same) *with Meo v. Lane Bryant, Inc.*, No. CV186360JMAAKT, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) (holding that courts may exercise out-of-state jurisdiction); *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019), *aff'd*, No. 17CV4780MKBRLM, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019).

The unresolved nature of this issue is reflected by the posture of many of the other appellate rulings on this issue. Three of the four appellate decisions on this question have come on interlocutory appeal. *See Fischer*, 42 F.4th at 370 (appellate court hearing case on interlocutory review); *Canaday*, 9 F.4th at 395 (same); *Waters*, 23 F.4th at 87 (same). And as Plaintiffs note, district courts in the Seventh and Ninth Circuits recently certified interlocutory review on the same question. *Vanegas*, Docket No. 23-2964 (7th Cir. 2023); *Harrington*, Docket No. 24-742 (9th Cir. 2024). It is difficult to conceive of an issue on which there might be more substantial ground for disagreement.

3. **Material Advancement of Litigation**

The final criteria is whether interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An interlocutory appeal "materially advance[s]" the litigation when it accelerates or simplifies

13

trial court proceedings. Wright & Miller § 3930 *Criteria for Permissive Appeal*, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.). Bimbo states that the putative class is composed of 654 distributors in Vermont, New York, and Connecticut. It also states that 600 of those 654 potential participants are located in New York and Connecticut. ECF No. 90-1 at 5. Resolving the personal jurisdiction issue – and thereby determining whether the action will involve a maximum of approximately 50 or 650 plaintiffs – has the potential to "advance the time to trial or shorten the trial." *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 274 (S.D.N.Y. 2009).[9] This is true regardless of outcome: as the District Court for the Western District of Tennessee noted, if the Second Circuit finds that this Court "does have personal jurisdiction over out-of-state opt-in plaintiffs, the parties would forego the burdens associated with bringing and defending FLSA collectives in multiple federal districts across the country." *Canaday v. Anthem Co., Inc.*, No. 1:19-cv-01084-STA-jay, ECF No. 91 at 1 (W.D. Tenn. June 8, 2020). Accordingly, resolution of the personal jurisdiction

---

[9] Courts and commentators have recognized the "artificiality of attempting to identify a controlling question as an inquiry separate from the prediction whether appeal may materially advance the termination of the litigation." Wright & Miller § 3930; *see also Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).

14

issue will materially advance the litigation, and the issue is suitable for interlocutory review.

## CONCLUSION

For the foregoing reasons, Bimbo's motion for certificate of appealability (ECF No. 90) regarding the Court's April 2, 2024 Collective Order (ECF No. 89) is **granted**. The Collective Order is certified for interlocutory review pursuant to 28 U.S.C. § 1292(b), and that Order is accordingly amended pursuant to Fed. R. App. P. 5(a)(3).

Plaintiffs' motion to dismiss Plaintiff Martel (ECF No. 88) is also **granted**, and Plaintiff Martel is dismissed without prejudice.

DATED at Burlington, in the District of Vermont, this 3rd day of June, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge